NAME: Xavier Lumar J'Weal
ADDRESS: Mule Creek State Prison
         P.O. Box 409020 / A-1-230
         Ione California [near 95640]
CDCR#: T-08643
      [PRO-SE LITIGANT]

**FILED**

Apr 21, 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

In The United States District Court For
The Eastern District Of California

Xavier Lumar J'Weal,
        plaintiff,

              v.

1. California Dept. of Correction
   & Rehabilitation (et al.,)
                (defendants')

(see additional defendants listed
on page 1-A/B. All Defendants
Are Sued in their Official
Capacities & Private Capacities)

2:21-cv-0712 DB (PC)

Case No: _____

Initial Complaint "Jury
Trial Demanded."

I.   Jurisdiction & Venue

1.)     This is a Civil action authorized by th. U.S.C. § 1983, to
redress the deprivation, under Color of State Law, of rights
secured by the Constitution of the United States of America.
        The Court has jurisdiction under 28 U.S.C. § 1331 and
1334 (A)(3).
Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201

1.

and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. § 2283 & 2284 and rule 65 of the Federal Rules of Civil Procedure.

2.)   The United States District Court for The Eastern District of California is an appropriate venue under 28 U.S.C. § 1391 (b)(2), because it is where the events giving rise to this claim occured, specifically at Mule Creek State Prison (herean after refered to as M.C.S.P.) in the City of Ione, County of Amador, State of California.

## II.   PLAINTIFF'S

3.)   Plaintiff, Xavier Lamar Dukual, is and was at all times mentioned herein, a prisoner of the State of California in the custody of the California Department of Corrections & Rehabilitation (herean after refered to as C.D.C.R.). He is currently confined at M.C.S.P., in Ione, California.

## III.   DEFENDANTS'

4.)   Defendant One, The California Dept of Corrections & Rehabilitation (C.D.C.R.) is a Public Entity of the State of California which has waived its sovereign immunity by accepting federal funding from the A.P.A. It is legally responsible for the housing, care, living conditions, and overall welfare of all state prisoners including those housed at M.C.S.P..

2.

## Additional Defendant's

2.) California Regional Water Quality Control Board (C.R.W.Q.C.B.)

3.) The County Of Amador

4.) The City of Ione

5.) Scott Kernan (Secretary : C.D.C.R)

6.) Terry Bettencourt (Regional Facilities Manager : C.D.C.R)

7.) Tamir Ahmed (Associate Director : C.D.C.R)

8.) Gregory Larrabee (Environmental & Regulatory Compliance Chief : C.D.C.R)

9.) Rosanne Campbell (C.D.C.R). Ex-Warden : M.C.S.P. 2012-2015)

10.) Joe Lizzarraga (C.D.C.R). Ex-Warden : M.C.S.P. 2015-2018)

11.) Kenny Kroyle (California E.P.A. Compliance & Enforcement Officer : C.R.W.Q.C.B.)

12.) Andrew Altevogt (Assistant Executive Officer : C.R.W.Q.C.B.)

13.) Harold Hold (Compliance & Enforcement Officer : C.R.W.Q.C.B.)

PG. 1-A

5.)     Defendant Two, The California Regional Water Quality Control Board (hereon after refered to as C.R.W.Q.C.B.) is a public entity of the State of California which have waived it's sovereign immunity by accepting FEDERAL FUNDING from the Environmental Protection Agency (E.P.A.).

It is legally responsible for the monitoring and regulation of the water quality throughout the State of California, the enforcement of compliance with California State Clean Water Standards, and the testing of all drinking water and ground water tables throughout the State of California.

6.)     Defendant three, the County of Amador is a local public entity in the state of California. It is legally responsible for the welfare of all residents living within it's County boarders, the enforcement and compliance with all laws by all residents, business's and governmental agencies residing within it's boarders, and the enforcement of all binding contracts it is a party to as well.

7.)     Defendant four, the City of Ione is a local public entity in the State of California. It is legally responsible for the welfare of all residents living within it's city limits, the enforcement and compliance with all laws by all residents, business and governmental agencies residing within it's city limits, and enforcement of all binding contracts it is a party to as well.

3.

8.) Defendant five, Scott Kernan, is the ex-secretary of C.D.C.R. from 2012-2018, Approximately. He was legally responsible for the overall operation of the Department and each institution under it's jurisdiction, including M.C.S.P..

9.) Defendant six, Terry Bettencourt, is the Regional Facilitie Manager for C.D.C.R.. And is legally responsible for the management of all facilities under it's jurisdiction, including M.C.S.P..

10.) Defendant seven, Tamir Ahmed, is the Associate Director for C.D.C.R.. Plaintiff is unsure as to the exact legal responsibilities for this Defendants job title and position.

11.) Defendant eight, Gregory Larrabee is the Environmental & Regulatory Compliance Chief for C.D.C.R.. He is legally responsible for ensuring the overall Compliance with all environmental regulations and standards of the State of California by C.D.C.R. and all institutions under it's jurisdiction, including M.C.S.P..

4.

12.) Defendant nine, Rosanne Campbell, was the Warden of M.C.S.P. for C.D.C.R. from 2012-2015. She was legally responsible for the overall operation of M.C.S.P. and the overall welfare of all Prisoners Housed at M.C.S.P., from 2012-2015 Approximately.

13.) Defendant ten, Joe Lizarraga, was the Warden of M.C.S.P., for C.D.C.R. from 2015-2018. He was legally responsible for the overall operations of M.C.S.P. and the overall welfare of all prisoners Housed there from 2015-2018, Approximately and has subsequently been terminated from employment with C.D.C.R. for serious Misconduct.

14.) Defendant eleven, Kenny Kroyle, is the California E.P.A. Compliance and Enforcement Officer for the C.R.W.Q.C.B.. He is legally responsible for enforcement of and Compliance of all [and with] Environmental Protection laws, policies, procedure, and regulations pertaining to water Quality Standards, by all California State agencies and their facilities / institutions, counties, cities, and business's under the C.R.W.Q.C.B's jurisdictions.

5.

15.) Defendant twelve, Andrew Altevogt, is the assistant Executive Officer for the C.R.W.Q.C.B.. Plaintiff is unsure as to the full extent of this defendant's legal responsibilities for and duties of this job assignment and title position.

16.) Defendant thirteen Harrold Hold, is the Compliance and Enforcement Officer for the C.R.W.Q.C.B.. He is legally responsible for enforcement of and compliance with all water quality standards and the regulations, policies, and procedures of the C.R.W.Q.C.B.. by the State of California and it's governmental agencies, institutions, facilities, business's, and residents in the State of California.

17.) Defendant fourteen, Patrick Covello, is the current Warden of M.C.S.P. for C.D.C.R.. He is legally responsible for Operations of M.C.S.P. and the welfare of all prisoners housed there.

18.) Defendant fifteen, Ralph Diaz, is currently the Secretary for C.D.C.R.. He is legally responsible for the overall Operations of the department and each institution under it's jurisdiction, including M.C.S.P..

6.

## IV. FACTS

19.) Plaintiff asserts that on September 9th of 1985, the Defendants The County of Amador, The City of Ione, & C.D.C.R. did infact enter into a contract to build M.C.S.P.. In that contract Defendant C.D.C.R. agreed to build a Total of Three Water Treatment Plants for M.C.S.P. to Treat and Recycle it's Waste Water.

The Third of these Water Treatment and Reclamation Plants was to have specifically been built once the prison population at M.C.S.P. had reached 1700 inmates or exactly 2 years after M.C.S.P. was completed. Plaintiff asserts that, through the time of the filing of this suit, Defendant C.D.C.R. still have not built this Tertiary Water Treatment and Reclamation Plant, which was agreed upon by all parties, in direct violation of the previously mentioned September 9th, 1985 Contract. Plaintiff asserts that even though he is not a party or signatory to this Contract, he has never the less suffered grievous injury to his person by C.D.C.R.'s breach of this Contract by being forced to consume and bath with the water at M.C.S.P. which, Plaintiff asserts that upon information and belief, is improperly reclaimed and thus still contaminated due to the fact that M.C.S.P.'s current water treatment and reclamation plants are only capable of properly and adequately processing clean water for 1700 inmates and a

7.

1   total of 1000 staff, yet is currently processing water
2   for over 3,968 inmates and over 1,125 staff, if not
3   more in both instances (the figures stated are not
4   exact, as they are based upon known numerical values
5   over a year old, yet still close to accurate).
6   Plaintiff further asserts that the Defendants the City of
7   Ione, and the County of Amador have NEVER, to this
8   day, attempted to enforce the aforementioned
9   contract with C.D.C.R. and are just as liable for the
10  damages to plaintiff explained in this paragraph,
11  (along with all damages that will be explained in
12  paragraphs later detailed in this Complaint), due to
13  their failure to enforce C.D.C.R.'s compliance with
14  said contract.
15
16  20.) Plaintiff asserts that M.C.S.P. was infact
17  constructed using cast iron piping for it's water,
18  sewer, and strom drain piping systems which are
19  susceptible to sever corrosion when combined with
20  Hot water and other various highly corrosive agents
21  which are utilized in various prison applications.
22  As such, many of the water, sewer, and
23  stormdrain pipes in the ground at M.C.S.P. have
24  severely corroded and cracked open.   Due to the
25  fact that many of these sewer pipes and water
26  pipes are located side-by-side next to each other,
27  or over lap each other in many areas, the broken sewer
28

8.

1 pipes are infact leaking raw sewage and Industrial waste
2 directly into the drinking waters supply pipes further
3 contaminating the water that plaintiff is forced to consume
4 and bath with. Plaintiff asserts that the use of
5 these cast Iron pipings is infact a design flaw of most,
6 if not all, of the 270 Design prisons in the State
7 of California and is directly responsible for the
8 catastrophic failure of the water, sewer, & storm
9 drain piping plumbing systems, at M.C.S.P.,
10 which has compromised the integrity of the entire
11 piping system and is actively contaminating the drinking
12 water supply and ground water tables. Plaintiff
13 asserts that Defendants C.D.C.R., Scott heman,
14 Ralph Diaz, Terry Bettencourt, Tamir Ahmed,
15 Gregory Larrabee, The C.R.W.Q.C.B., henny
16 Kroyle, Andrew Altevogt, and Harrold Hald are infact
17 are very much aware of the issue with the water, Sewer,
18 & Storm Drain piping mentioned above, as well as,
19 the contamination of the drinking water at M.C.S.P.,
20 through various Public meetings they have conducted
21 dealing with the matter, yet never once have they
22 bothered to warn the plaintiff or inmate population at
23 M.C.S.P. about the problem, nor have they ever
24 attempted to provide clean drinking water to plaintiff
25 or the inmate population. This problem still has not
26 been fixed to this day and plaintiff asserts he is
27 constantly forced to deal with water coming out of his Sink
28 which is brown and smells like mud and dirt Sometimes,

9.

and at other times smells like raw sewage, as well as, shower water that causes plaintiff to breakout with a rash after bathing in it.

Plaintiff further asserts that the drain pipes around M.C.S.P.'s A-Facility often smells of gasoline or diesel fuel and that when the tap water is consumed in any large quantity (i.e. 2 to 3 16 oz. cups or more) at a time where I, plaintiff does experience nausea, vomiting, diarhea, stomach cramps, dizziness, tremors bone & joint pain constant fatigue.

21.) Plaintiff asserts that Defendants C.D.C.R., Scott Kernan, Ralph Diaz, Gregory Larrabee, Terry Betten-court, Tamir Ahmed, Rosanna Campbell, Joe Lizzarraga, And Patrick Covello did infact spend tax-payer dollars in the sum of approximately $2,000,000.00 U.S. Dollars and more in efforts to cover up the extent of the contamination of the water at M.C.S.P., by hiring Sierra Construction and Construction Company to unknowingly build an underground Culvert System at M.C.S.P. which the previously named defendants would utilize to hide the extent of the contamination that's coming from M.C.S.P.'s water, sewer, and steam drain plumbing infrastructure, which is not only contaminating the water plaintiff is forced to consume and bath with, but also the ground water tables surrounding M.C.S.P. (i.e. - wells, aquifers, rivers / streams, etc.).

13.

Plaintiff further asserts this was done in an effort to cover-up and prevent the discovery of the design flaw of the 270 design prisons mentioned previously above in paragraph #20. Plaintiff also asserts that portions of the above mentioned monies were also utilized by the above mentioned defendants to contract a company named Source Molecular out of Miami, Florida, to test water samples from M.C.S.P., in order to attempt to cover up the water contamination because this company (Source Molecular) is a company which does not utilize E.P.A. Standardized and approved testing methods, nor are they an Environmental Laboratory Accredited Company, all in the effort to hide the design flaw mentioned previously and to prevent Plaintiff and other inmates from discovering the contamination of the water and filing civil suit, as well as, to prevent sanctions from the federal government.

22.) Plaintiff asserts that defendants The C.R.W.Q.C.B., Harold Hold, Andrew Altevogt, and Kenny Kroyle are very much aware of the severity of the severity of the Contamination at M.C.S.P. because they have been active participants in many public meetings they have held dealing with the matter and in which they have readily admitted that there is sever Contamination of the water, yet said defendants have repeatedly failed to enforce C.D.C.R.'s and more specifically, M.C.S.P.'s compliance with State

II.

and Federal Clean Water standards for more than 2 years now, and never attempted to force C.D.C.R. and M.C.S.P. to disclose the water contamination to plaintiff or the inmate population at M.C.S.P., nor have they ever attempted to force them to provide clean drinking water for the plaintiff or inmate population. Plaintiff further asserts that instead of enforcing compliance with both State and Federal clean water standards by C.D.C.R. and M.C.S.P., the above named Defendant have infact repeatedly dismissed any and all complaints about, failed & refused to complete investigations of, and outright deliberately attempted to bury all complaints related too the on going contamination of the water supply at & around M.C.S.P..

23. Plaintiff asserts that between the months of June - August 2017. (this is an approximate date as Plaintiff cannot exactly remember the exact date and time of the activities described taking place) Defendant Joe Lizzaraga did infact authorize C.D.C.R. employees whose names are unknown to Plaintiff, at M.C.S.P. who work for Plant Op's to utilize unlicensed and uncertified inmate laborers, (from the yard crew job assignments) to dig up and repair the water and sewer mains located on the inside of the inside of the dirt tracks area in front of building #2 on A-facility without permits or an E.P.A. certified inspector being present

12.

to supervise the project at the time the inmate Laborers
job was to fix the water main piping which had
ruptured, but during the repair they ruptured the sewer
main as well, allowing raw sewage to contaminate the
water supply lines running off of the water main.

Plaintiff asserts that both pipelines were intact
dismantled at the same time, in order to repair the
breaks in the pipes at the same location where both
pipes cross over one another.

Plaintiff further assert that the unlicensed inmates as
Laborers did infact cross the two pipelines while putting them
back together causing the sewer line to drain into the
water supply line and the water main to run out
the sewer line, allowing raw sewage to flow
freely throughout the water supply lines on A-
Facility. Two days later the same inmate
Laborers had to dig up these same lines and
reconnect them properly, yet never once were
the water main and water supply piping systems
flushed of Contaminats, nor were they ever
disinfected and sanitized & defendant Joe
Lizzarraga never once attempted to supply clean
drinking water for plaintiff or the inmate population.

24.)   Plaintiff asserts that defendant's C.D.C.R.,
Scott Kernan, Terry Bettencourt, Ralph Diaz,
Tamir Ahmed, Gregory Larrabee, & Joe
Lizzarraga did infact authorize the use of

13.

Certain chemicals (Plaintiff is unsure asto the exact chemicals utilized by defendant's, to be poured directly into the Hot Water Boilers on All Facilities at M.C.S.P., and which were to be utilized to attempt to stop / prevent the Contaminated water from eating away the metal linings of the Boiler INSIDES.

Plaintiff asserts that he was forced to Consume & bath with the water which was full of these chemicals, without ever being used to prevent them from destroying the boilers, or that these chemicals would be in the water I am being forced to Consume and bath with.

Plaintiff further asserts that the chemicals Defendants utilized didn't even work, because the contamination of the water is so bad, & Defendant's ended up having to replace the boilers anyway thus unnecessarily exposing plaintiff to the consumtion of the chemicals they utilized, yet never once provided me clean drinking water.

25.) Plaintiff asserts that due to the facts stated in paragraphs #19-24. he has infact suffered the inhumane and degrading treatment of being forced to consume and bathe with contaminated water for the past      years that he has been incarcerated at M.C.S.P. by all named Defendants actions and as a direct result he has also suffered the following injuries and ailments from it:

- EXCESSIVE DIARRHEA (TAKING MEDICATION FOR IT:)
- Whites DISTURBED DUE TO FREQUENT BOWEL MOVEMENTS:)
- H. pyllori found in plaintiff stool from a fecal matter occult test:)
- Gastroesophageal Reflux Disease resulting from 1 of STOMACH ulcers from H. PYLORI:)

15.

I'am incarcerated at M.C.S.P..

And all named Defendants actions are a direct result as I suffer the following injuries and ailments from its; dizziness, vomitting, tremors, diarrhea, bloody stool, sever headache, joint & bone pain, sever cramping of the stomache and muscles, fatigue, and lost of appetite all of which are often experienced after consuming several cups of tap water, and now due the constant exposure are suffered at random times.

Plaintiff, also asserts that when I, bathe with the water I'am afflicted with sever itching burning rashes over my body, from the water.

Plaintiff, further asserts that due to the demoralizing knowledge that the Defendants would, and have deliberatly, and knowingly subject me to this Inhumane and degrading treatment I have infact suffered sever psychological trauma, mental anguish, and sever emotional distress, because he has been treated worse than an animal (Dog or Cat) in the 2000's which are atleast given [Clean drinking water] everyday.

V. EXHAUSTION OF LEGAL REMEDIES

26.) Plaintiff, Xavier Lumar Jubial, T08643, used the Prisoner Gail Appeal / Grievance procedures available at M.C.S.P. to try and solve the problem. In, 4/11/2020, Plaintiff, Xavier Lumar Jubial, T-43, presented the facts relating to this Complaint. In, about approx 6/2020, Plaintiff, Xavier Lumar Jubial, T-43, was sent a response saying that his Appeal / Grievance had been sent to the THIRD LEVEL APPEALS, he appealed the denial of the Appeal / Grievance and approx 11/2/2020, I've yet to receive any response stating his appeal of the 3rd level initial response decision was denied, and or granted administrative remedies have yet to be EXHAUSTED.

VI. Legal Claims

27.) Plaintiff re-alleges and incorporates by reference paragraphs # 1-26.

28.) The unsafe and inhumane living conditions and deliberate indifference to them violated Plaintiff, Xavier Lumar Jubial's rights, and constituted Cruel and Unusual Punishment under the Eighth Amendment of the United States Constitution.

29.) The failure to notify of and protect from the unsafe living conditions violated Plaintiff, EIGHTH AMENDMENT rights, and constituted Denial of equal protection under the law under the fourteenth Amendment of the United States Constitution.

17.

30.) The Plaintiff has no plain, adequate, or complete remedy at Law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably harmed/injured by the conduct of the Defendants unless this court grants the Declaratory and Injunctive relief which Plaintiff seeks.

VII. Prayer For Relief

WHEREFORE, PLAINTIFF respectfully prays that this Court enter Judgment granting Plaintiff:

31.) A Declaration that the acts and omissions described herein violated Plaintiff's rights under the United States Constitution and the Laws of the United States.

32.) A preliminary and permanent injunction ordering the following:   A.) All Defendants to immediately start providing clean bottled drinking water to Plaintiff and all inmates housed at M.C.S.P., until such time as the Water Contamination issues are completely fixed and all drinking water supplies at M.C.S.P. once again conform to Federal E.P.A and Department of Health & Human Services Center for Disease Control, Clean Water Standards.   B.) Defendants C.D.C.R., The County of Amador, & The City of Ione to uphold the original Sept. 9, 1985, Contract (previously detailed in paragraph #19) and

19.

build the agreed upon 3rd Water Treatment & Reclamation Facility for M.C.S.P. at the expense of the C.D.C.R. Officer's Union with all costs utilized to build the facility to be taken directly from the C.D.C.R. pension fund Account, as punishment for C.D.R.'s breach of Contract.

C.) Defendants C.D.C.R. to IMMEDIATLY shutdown and fix the Design flaws of all 270 Design Prisons in the State of California by replacing ALL cast iron pipping utilized in ALL 270 Design Prisons and Decontaminating ALL Soil, ground water, tables, and drinking water supplies in and around All of those same prisons in order to restore the land and facilities back to Federal E.P.A. Regulations and standards.

D.) A Remedial Turn Around Plan of Action for the entire California department of Corrections and Rehabilitation which will be formulated by the Plaintiff and this Court and for this Court to order the C.D.C.R. Union to Relinquish Total Control of the California Department of Corrections & Rehabilitation and for this Court to create a Special Committee which will take over the Administration of All C.D.C.R. operation under the direct supervision and direction of the Special Masters.

This Special Master and Special Committee will be vetted by the Court in order to insure all individuals have zero ties, of any sort, to the C.D.C.R. Union and/or any of it's members,

19.

and also to insure they have zero financial interests and involvement with C.D.C.R. and the C.D.C.R. Union.

E.) For this court to convene a Special Congressional Oversight Committee which will work with a Special Task Force from the F.B.I. (with its members specially chosen and appointed by this court) to conduct a DEEP INVESTIGATION into ALL Activities of the C.D.C.R., all of its Staff / officers / ranking officers and top brass / Union Representatives / an Union of C.D.C.R. itself for the past 25-30 years, with such areas of investigation to include the following: All business dealings, transactions, contracts, expenditures, Inmate Trust Account Activities. Inmate Welfare Fund Account Activities, Staff Complaints, unauthorized & authorized policies / procedures / practices / and underground rules such as unsanctioned Canine Techniques utilized by the C.D.C.R. and it's officer's and staff, State and Federal Funding procurement and the handling of said funding, misconduct of staff and the handling of all such complaints, and any other area of interest this Court and it's Special Congressional Oversight Committee might deem appropriate to investigate including R.I.C.O. Violations, Embezzlement, etc., . This Congressional Committee and F.B.I. task force will be vetted by the Court to insure they have zero ties to the C.D.C.R. Union and / or any of it's employees, and to insure they have zero Financial investment / involvement with C.D.C.R. and the C.D.C.R. Union.

20.

F.) This Court to Order All Defendants, their successors in office, agents and employees, and All other persons acting in concert and participation with them to immediately stop harrassing, retaliating against, carrying out any form of reprisal toward, or in any otherwise interfeering with Plaintiff and his every day life from this point forward till the end of litigation dealing with this matter of this complaint and beyond in perpetuity, and for this court to recognize Any and All negative encounters with any of the above stated individuals as reprisal, retaliation, and harrassment for filing this complaint unless otherwise proven to this court by Defendants and for this court to take Any and All appropriate legal actions, against All Defendants, up to and including Criminal prosecution on behalf of plaintiff.

33. Compensatory damages in the amount of $20.000.000.00 (twenty million dollars) from all Defendants jointly in their official capacities and compensatory damages in the amount of $2.000.000.00 (two million dollars) from each individual Defendant in their Private Capacities.

34. Punitive damages in the amount of $100.000.000.00 + (one hundred million dollars plus) from all defendants jointly in their official capacities and punitive damages in the amount of $10.000.000.00 + (ten million plus dollars) from each individual Defendant in their

21.

Private capacities.

35.   The Court to place liens for the aforementioned sums on all worldly possessions, Bank Accounts, Pension Funds, current & Future Employment checks, all stocks, bonds, subsidiaries, investments. and their Federal Employment Funds for each Defendant.

36.   A jury trial on all facts triable by jury, and to have full media coverage throughout all proceedings of litigation of this complaint.

37.   Plaintiffs costs in this suit and for all judicial fees to be paid by Defendants.

38.   All taxes to be paid by defendants on all Monetary sums awarded to plaintiff by jury from trial or through settlement.

22.

39. For Plaintiff to be given a Commutation of his sentence for S208144DA Kern County    Case name: by defendants, and which will not be subject to recall for any reason and which affords Plaintiff an immediate release from prison without any period of parole.

40. Any additional relief this Court deems just, Proper, & Equitable.

Dated: 4·16·2021

Respectfully Submitted by:

Name: _____

C.D.C.R.#: T-08643

Address: 4061 Hwy 104
P.O. Box 409040
Ione California 95640

VERIFICATION

I. _____, have read the foregoing complaint and do hereby verify that the matters contained therein are true except as to the matters alleged on information and belief, and as to those. I believe them to be true. I certify under Penalty of Perjury that the foregoing is both true and correct to the best of my understanding and knowledge. Executed on this 4-16- day

23.

1  in the month of _April_ in the year 2020 at MCSP
2  in the County of Amador. in the State of California.

3
4                          Name: _Kevin Farrell O'Neal_
5                          Signature: _____
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                              24.