UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER LUMAR J'WEIAL,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | No. 2:21-cv-0712 DB P<br><br><br>ORDER |

Plaintiff, a state prisoner, proceeds pro se with a civil rights action. This matter was referred to the undersigned by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). Plaintiff's complaint filed on April 21, 2021 is before the court for screening.

**I.     In Forma Pauperis**

Plaintiff has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis. (ECF No. 6.) Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). The request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By separate order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). The order will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent

1

of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00 until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

## II.     Screening and Pleading Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court must dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. In reviewing a complaint under this standard, the court accepts as true the factual allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construes the pleading in the light most favorable to the plaintiff, and resolves all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). The court will not, however, assume the truth of legal conclusions cast in the form of factual allegations. United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

The court applies the same rules of construction in determining whether the complaint states a claim on which relief can be granted. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). A formulaic recitation of the elements of a cause of action does not suffice to state a claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To state a claim on which relief may be granted, the plaintiff must allege enough facts "to state a claim to

relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III.    Plaintiff's Allegations

Plaintiff is and was incarcerated at Mule Creek State Prison ("MCSP") at all relevant times. Defendants are the California Department of Corrections and Rehabilitation ("CDCR"), various CDCR employees and officials, the City of Ione, the County of Amador, the California Regional Water Quality Control Board ("CRWQCB"), and various individual CRWQCB employees and officials.

Plaintiff alleges the water treatment plants in operation at MCSP were not designed to handle the number of prisoners and staff currently at MCSP. Plaintiff alleges defendants CDCR, the County of Amador and the City of Ione entered into a contract to build MCSP in 1985 pursuant to which CDCR agreed to build a total of three water treatment and reclamation plants for MCSP. (ECF No. 1 at 8.) The third water treatment plant was supposed to be built once the prison population reached 1700 inmates or two years after MCSP was completed. (Id.) However, the third plant has still not been built and MCSP is currently processing water for nearly 4000 inmates plus staff. (Id. at 8-9.) As a result, he has been forced to drink and bathe in contaminated water.

Plaintiff additionally alleges the cast iron pipes used for MCSP's water, sewer and storm drain piping systems are severely corroded and cracked such that they leak raw sewage and industrial waste directly into the drinking water supply pipes. (ECF No. 1 at 9-10.) Plaintiff alleges the sink in his cell produces brown water that smells like dirt or raw sewage and that the drainpipes around A-Facility often smell of gasoline or diesel fuel. (Id. at 11.) When plaintiff drinks 32 ounces or more at a time of tap water he experiences nausea, vomiting, diarrhea, stomach cramps, dizziness, tremors, bone and joint pain and/or constant fatigue. (Id.) Showering in the water causes him to break out in a rash. (Id.)

Plaintiff alleges the CDCR defendants and the CRWQCB defendants are aware of the issues with the water, sewer and storm drain piping as well as the contamination of the drinking

water because they have held various public meetings regarding the issue. (ECF No. 1 at 10, 12.) Despite being aware of these dangers, defendants have neither warned the inmate population at MCSP nor attempted to provide clean drinking water. (Id.) Instead of warning the inmate population, plaintiff alleges the CDCR defendants have tried to address or cover up the extent of the water contamination through various unsuccessful methods which, in some instances, have caused further contamination instead of helping. (Id. at 12-14.)

Plaintiff brings a claim for cruel and unusual punishment under the Eighth Amendment to the United States Constitution and a claim for a denial of the equal protection of laws under the Fourteenth Amendment. (ECF No. 1 at 18.) He seeks damages, declaratory judgment, and injunctive relief. (Id. at 19-20.)

**IV.   Discussion**

**A.   Claims against the County and City**

As local government units, the City of Ione and the County of Amador are proper defendants in a suit brought under 42 U.S.C. § 1983. See Monell v. Department of Social Services, 436 U.S. 658, 691 (1978); Hammond v. County of Madera, 859 F.2d 797, 801 (9th Cir. 1988). However, local government units may be held liable under section 1983 only where the plaintiff alleges facts showing a constitutional deprivation was caused by a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the local government unit or by the local government's final decision maker. Monell, 436 U.S. at 690; Board of the County Commissioners v. Brown, 520 U.S. 397, 402-04 (1997); Navarro v. Block, 72 F.3d 712, 714 (9th Cir. 1995). In other words, a Monell claim exists only where the alleged constitutional deprivation was inflicted in "execution of a government's policy or custom." Monell, 436 U.S. at 694. Here, the complaint contains no such allegations against the City of Ione or the County of Amador. Accordingly, the complaint fails to state a claim against either local government unit. See Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (applying Iqbal's pleading standards to Monell claims).

////

////

4

### B. Claims against CDCR and CRWQCB

CDCR and CRWQCB are protected under the doctrine of sovereign immunity. The Eleventh Amendment of the United States Constitution prohibits suits against a state and its agencies and departments for legal or equitable relief. See Federal Maritime Commission v. South Carolina State Ports Authority, 535 U.S. 743, 753 (2002). "The Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants and applies whether the relief sought is legal or equitable in nature." Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th Cir. 1991) (quotation omitted), cert. denied, 503 U.S. 938 (1992).

Although plaintiff alleges CDCR and CRWQCB have waived their immunity by receiving federal funding, the mere acceptance of federal funding does not, by itself, cause a waiver of sovereign immunity. See Holley v. Cal. Dep't of Corrs., 599 F.3d 1108, 1112 (9th Cir. 2010) (affirming dismissal of complaint against CDCR because California had not constructively waived its sovereign immunity merely by accepting federal funds). "To be a valid waiver, a state's consent to suit must be 'unequivocally expressed in the statutory text.'" Id. (citing Lane v. Pena, 518 U.S. 187, 192 (1996)).

Congress may validly abrogate a state's sovereign immunity by statute, but the Supreme Court has repeatedly emphasized that "§ 1983 was not intended to abrogate a State's Eleventh Amendment immunity." Kentucky v. Graham, 473 U.S. 159, 169 n.17 (1985); accord Quern v. Jordan, 440 U.S. 332, 342 (1979); see also Dittman v. California, 191 F.3d 1020, 1025-26 (9th Cir. 1999). In the context of prisoner lawsuits specifically, the Ninth Circuit has expressly and repeatedly held that CDCR and prisons within CDCR are immune from suit under the Eleventh Amendment. See, e.g., Brown v. Cal. Dep't of Corrs., 554 F.3d 747, 752 (9th Cir. 2009) ("The district court correctly held that the California Department of Corrections and the California Board of Prison Terms were entitled to Eleventh Amendment immunity."); Holley, 599 F.3d at 1112. Because claims under 42 U.S.C. § 1983 against CDCR and CRWQCB are barred by the Eleventh Amendment, CDCR and CRWQCB are improper defendants for this suit.

////

### C. Equal Protection

The Equal Protection Clause broadly requires the government to treat similarly situated people equally. Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013). To state a claim, a plaintiff must generally allege defendants acted with an intent or purpose to discriminate against him based upon membership in a protected class, such as a particular race or religion. See Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013). Here, plaintiff does not allege discrimination based on his membership in a protected class. Inmates are not a protected class for purposes of equal protection and are not similarly situated to prison staff or visitors. The facts alleged in the complaint do not state an equal protection claim and it does not appear a claim could be stated even with additional facts.

### D. Eighth Amendment

The Eighth Amendment requires prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care, and to take reasonable measures to guarantee the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). A prisoner seeking relief for an Eighth Amendment violation must show the defendant official acted with deliberate indifference to a threat of serious harm or injury to an inmate. Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002).

"Deliberate indifference" has subjective and objective components. A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and... must also draw the inference." Farmer, 511 U.S. at 837. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 837. Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Allegations of water contamination and resulting harm may state a claim under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 35-37 (1993) (using "demonstrably unsafe drinking water" as a hypothetical example of a potential conditions of confinement claim); Wallis

v. Baldwin, 70 F.3d 1074, 1076-77 (9th Cir. 1995) (holding that the exposure to toxic substances such as asbestos can support a claim under section 1983). However, individual defendants can be liable only for their own actions or omissions, and only upon a showing of their own subjective deliberate indifference. The complaint as currently pleaded is lacking in specific allegations to state claims against most of the individual defendants.

### 1. Individual CRWQCB defendants

Plaintiff names the following individual CRWQCB defendants: Kenny Kroyle, Andrew Altevogt, and Harold Hold, who are alleged to be California Environmental Protection Agency ("EPA") Compliance & Enforcement Officers with CRWQCB. Allegations that these defendants had knowledge about contaminated water at MCSP based on their alleged participation in public meetings where severe contamination of the water was "readily admitted" (ECF No. 1 at 12) are too vague and conclusory to plausibly show these individuals knew about a substantial risk of serious harm or injury to plaintiff and the inmate population at MCSP. Similarly, that they allegedly failed to enforce compliance with clean water standards is an unsupported conclusion that does not suffice to plead a claim. See Farmer, 511 U.S. at 837.

### 2. Individual CDCR defendants

The individual CDCR defendants and the positions they are alleged to occupy in either the present or the past are as follows: Terry Bettencourt- Regional Facilities Manager; Tamir Ahmed- CDCR Associate Director; Gregory Larrabee- CDCR Environmental & Regulatory Compliance Chief; Rosanne Campbell- MCSP Ex-Warden (2012-2015); Joe Lizzarraga- MCSP Ex-Warden (2015-2018); Patrick Covello- MCSP Warden (current); Scott Kernan- former CDCR Secretary (2012-2018); and Ralph Diaz- CDCR Secretary (current). The undersigned more closely examines the allegations against these defendants.

First, plaintiff alleges the individual CDCR defendants listed in the paragraph above tried to cover up the extent of the water contamination at MCSP by hiring Sierra Communication and Construction Company to build an underground culvert system. (ECF No. 1 at 11.) Plaintiff alleges these defendants also contracted a company named Source Molecular out of Miami, Florida, to test water samples from MCSP, and alleges they chose this company specifically

because it does not utilize EPA standardized and approved testing methods, and because it is not an Environmental Laboratory Accredited Company, all in an effort to hide the alleged water contamination. (Id. at 12.) Finally, plaintiff alleges the individual CDCR defendants other than Covello and Cambell allowed the use of chemicals to be poured into the hot water boilers in an attempt to stop the contaminated water from eating away the metal linings of the boilers and that the chemicals thereafter remained in the water plaintiff was forced to drink until defendants had to replace those boilers. (Id. at 15.)

Plaintiff's conclusion that defendants intended the described underground culvert system to hide the alleged water contamination is speculative and inadequately supported, as is the claim that the described water testing was undertaken for such a purpose. Conclusory and speculative allegations about the hidden purposes of construction projects, water testing, and the use of water treatment chemicals do not plausibly show the water is contaminated, that dangerous chemicals remain in the water when used or consumed by plaintiff, or that defendants are, subjectively, deliberately indifferent to a serious risk of harm. In addition, it is unclear how each of these defendants might have been personally involved in the alleged activities since they were not all in their respective positions at the same times. Plaintiff does not provide the details of the timing of the activities described which are alleged to have occurred sometime in the past.

Plaintiff alleges defendants Kernan, Diaz, Bettencourt, Ahmed, and Larrabee are aware of the alleged issues with the water, sewer, and storm drain piping mentioned above as well as the alleged water contamination through various public meetings they have conducted. (ECF No. 1 at 10.) As set forth, though, allegations that defendants had knowledge about allegedly contaminated water at MCSP based on their participation in meetings and that they failed to act are too vague and conclusory to adequately plead a deliberate indifference claim. See Farmer, 511 U.S. at 837. More specific facts pertaining to these individual defendants would be needed in order to plausibly show a violation.

Plaintiff's most specific allegations pertain to former Warden Lizarraga, whom plaintiff alleges authorized inmate laborers to dig up and repair the water and sewer mains in front of Building #2 on A-Facility, resulting in raw sewage contaminating the water supply. (ECF No. 1 at

13-14.) Plaintiff alleges this contamination occurred when the sewer main ruptured and when two pipelines were inadvertently crossed until being corrected two days later. (Id.) Plaintiff alleges Lizarraga failed to take reasonable abatement measures when this occurred, such as disinfecting and sanitizing the pipelines, and supplying clean drinking water in the meantime. (Id. at 14.)

Construing the factual allegations in the light most favorable to the plaintiff, and resolving all doubts in plaintiff's favor, the allegations specific to Warden Lizarraga, considered with the rest of the complaint, suffice to state a claim for screening purposes. Plaintiff will be given the option of proceeding forthwith to serve defendant Lizarraga and pursue his claim only against that defendant or he may delay serving that defendant and attempt to state a cognizable claim against additional individual CDCR defendants.

**V.    Conclusion**

If plaintiff elects to proceed forthwith against defendant Lizarraga, against whom he has stated a potentially cognizable claim, he shall so notify the court. Following receipt of such a notice, the court will order service of defendant Lizarraga. If plaintiff elects to attempt to amend his complaint to attempt to state a cognizable claim against additional individual CDCR defendants, he has thirty days so to do. Plaintiff is not obligated to amend his complaint.

If plaintiff opts to amend, he must set forth "sufficient factual matter... to 'state a claim that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). If plaintiff chooses to file an amended complaint, it should be brief, and must state what each named defendant did that led to the deprivation of constitutional rights. Although plaintiff has been granted the opportunity to amend his complaint, it is not for the purposes of adding new and unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves a function in the case. Id. The amended complaint should be titled "First Amended Complaint" and should reference the case number.

If plaintiff does not wish to amend the complaint or pursue a claim solely against former Warden Lizarraga, he may file a notice of voluntary dismissal, after which the action will be

terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i). In the further alternative, plaintiff may elect to forego amendment and notify the court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004). If the last option is chosen, the undersigned will issue findings and recommendations to dismiss all claims and defendants except the Eighth Amendment claim against Warden Lizarraga, plaintiff will have an opportunity to object, and then the matter will be decided by a district judge.

In accordance with the above, IT IS HEREBY ORDERED:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 6) is GRANTED.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action as set forth by separate order.

3. The Clerk's Office shall send plaintiff a blank civil rights complaint form.

4. Within thirty days from the date of service of this order, plaintiff must file one of the following:

    a. A notice of election to proceed solely on an Eighth Amendment claim against Warden Lizarraga;

    b. An amended complaint curing the deficiencies in the claims identified in this order;

    c. A notice of voluntary dismissal; or

    d. A notice of election to stand on the complaint as filed.

5. Plaintiff is cautioned that failure to respond to this order will result in a recommendation that this action be dismissed with prejudice for failure to obey a court order and failure to prosecute.

Dated: November 23, 2021

DLB7
j'we0712.screen

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE