UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER LUMAR J'WEIAL, | No. 2:21-cv-0712 DB P |
| Plaintiff, | |
| v. | ORDER |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | |
| Defendants. | |

Plaintiff, a state prisoner, proceeds pro se with civil rights claims under 42 U.S.C. § 1983. Plaintiff's first amended complaint filed on March 3, 2022, is before the court for screening.[1] This matter is before the undersigned pursuant to Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I.      Screening and Pleading Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

////

---

[1] The amended complaint filed on March 3, 2022, titled "second amended complaint," is the first amended complaint following screening of plaintiff's original complaint.

1

1    A claim is legally frivolous when it lacks an arguable basis either in law or in fact.
2    Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th
3    Cir. 1984). The court must dismiss a claim as frivolous where it is based on an indisputably
4    meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at
5    327. In reviewing a complaint under this standard, the court accepts as true the factual allegations
6    of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976),
7    construes the pleading in the light most favorable to the plaintiff, and resolves all doubts in the
8    plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). The court will not, however,
9    assume the truth of legal conclusions cast in the form of factual allegations. United States ex rel.
10   Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

11   The court applies the same rules of construction in determining whether the complaint
12   states a claim on which relief can be granted. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Scheuer
13   v. Rhodes, 416 U.S. 232, 236 (1974). Pro se pleadings are held to a less stringent standard than
14   those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the court need
15   not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of
16   fact. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). A formulaic recitation
17   of the elements of a cause of action does not suffice to state a claim. Bell Atlantic Corp. v.
18   Twombly, 550 U.S. 544, 555-57 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To state a
19   claim on which relief may be granted, the plaintiff must allege enough facts "to state a claim to
20   relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility
21   when the plaintiff pleads factual content that allows the court to draw the reasonable inference
22   that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

23   **II.    Allegations in the First Amended Complaint**

24   Plaintiff alleges he has been forced to drink and bathe in contaminated water because the
25   water treatment plants at Mule Creek State Prison ("MCSP") do not safely or sufficiently process
26   the amount of water being used for the current number of prisoners and staff. (ECF No. 13 at 10-
27   12, 18, 26.) Plaintiff alleges MCSP's sewer and storm drain system has failed, resulting in
28   industrial waste and sewage spilling out and entering Mule Creek, leading to lawsuits, fines, and

1  meetings attended by the defendants. (Id. at 11-12, 15-16, 19-22.) He further alleges the Central

2  Valley Regional Water Quality Control Board ("CRWQCB") has found "a range of constituents,"

3  including volatile organic compounds, bacteria, and metals when testing MCSP water. (Id. at 9.)

4        Plaintiff alleges prison staff has informed him that MCSP's cast iron piping systems are

5  corroded. (ECF No. 13 at 13, 17, 26.) Plaintiff believes broken or corroded sewer pipes are

6  "leaking raw sewage and industrial waste directly into the drinking water supply pipes." (Id. at

7  17, 26.) He alleges MCSP staff are advised to avoid drinking the water and do not drink the

8  water, while the inmate population has never been cautioned about the water or provided with

9  bottled water. (Id. at 9, 25, 27.)

10        Plaintiff alleges workers hired by MCSP in 2012 and 2017 became ill when exposed to

11  contaminated water at MCSP. (Id. at 13, 20, 21.) Plaintiff alleges an underground culvert system

12  was built and a specific water testing company was utilized in efforts to fix or hide water

13  contamination. (Id. at 21-22.)

14        In 2017, former Warden Lizarraga authorized "unlicensed and uncertified" inmate

15  laborers to dig up and repair the water and sewer mains in front of Building #2 on A-Facility

16  "without permits or an E.P.A. certified inspector being present." (Id. at 24.) Lizarraga then

17  authorized the use of water treatment chemicals "in an attempt to stop or help prevent the

18  contaminated water." (Id.) The chemicals damaged the boilers, which were not thereafter

19  replaced. (Id. at 24-25.) The chemicals "didn't even work," and remained in the water, but

20  plaintiff was never supplied with clean drinking water. (Id.)

21        Plaintiff's sink produces brown water that smells like mud, dirt, chemicals, and raw

22  sewage, with the raw sewage smell "85 to 90% stronger in the shower." (ECF No. 13 at 21.)

23  Drinking MCSP water gives him diarrhea, for which he now takes medication, in addition to

24  bloody stool, vomiting, short term dizziness, fever, headaches, severe cramping, muscle fatigue,

25  joint pain, bone pain, and stomach pain. (Id. at 21, 27.) Plaintiff believes the water is the reason

26  for his "chronic care" placement. (Id.) Bathing in the water causes severe itching and rashes. (Id.)

27        The first amended complaint names as defendants seven individuals who are current or

28  former supervisory officials at MCSP. (ECF No. 13 at 1, 3-6.) Plaintiff alleges he has suffered

cruel and unusual punishment and been denied equal protection of the laws. (Id. at 28-29.) He seeks damages, declaratory judgment, and injunctive relief. (Id. at 30-36.)

### III. Screening of the First Amended Complaint

#### A. Eighth Amendment

The Eighth Amendment requires prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care, and to take reasonable measures to guarantee the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). A prisoner seeking relief for an Eighth Amendment violation must show the defendant official acted with deliberate indifference to a threat of serious harm or injury to an inmate. Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002).

"Deliberate indifference" has subjective and objective components. A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and... must also draw the inference." Farmer, 511 U.S. at 837. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 837. Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Exposure to contaminated water and resulting harm may state a claim under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 35-37 (1993) (using "demonstrably unsafe drinking water" as a hypothetical example of a potential conditions of confinement claim); Wallis v. Baldwin, 70 F.3d 1074, 1076-77 (9th Cir. 1995) (holding that exposure to toxic substances such as asbestos can support a claim under section 1983).

#### 1. Substantial Risk of Serious Harm

Plaintiff's belief that broken or corroded sewer pipes are leaking raw sewage and industrial waste directly into the drinking water pipes is based on his own speculation, which does not suffice to show he is exposed to contaminated water. In order to state a claim, the factual allegations must "raise a right to relief above the speculative level," which requires more than

"merely… a suspicion [of] a legally cognizable right of action." Twombly, 550 U.S. at 555. Similarly, plaintiff's speculation about the hidden purpose of CDCR's choice of water testing company, construction projects, and the general use of water treatment chemicals fails to plausibly show the water plaintiff drinks or bathes in is contaminated, or that dangerous chemicals remain in the water when used or consumed by plaintiff. Moreover, allegations that workers in 2012 or 2017 became ill when exposed to contaminated water somewhere at MCSP do not assist plaintiff to state a claim for the deprivation of his own rights.

The first amended complaint includes various quotations and descriptions of findings pertaining to MCSP water issues which are attributed to the CRWQCB. These quotations and descriptions, considered without their broader context, do not plausibly show that plaintiff is exposed to contaminated water. Likewise, general allegations that water testing of an unspecified source at MCSP revealed constituents in the water does not demonstrate the water plaintiff drinks or bathes in is unsafe.

However, plaintiff also alleges he experiences severe ill effects from drinking and bathing in MCSP water. For screening purposes, the court will accept these allegations as true.

### 2.     Subjective Deliberate Indifference

Plaintiff alleges the defendants, as current or former supervisory officials at CDCR, "knew fully" about various issues with MCSP water as reflected by their attendance at meetings. (ECF No. 13 at 10, 18, 26.) As plaintiff was informed in the court's initial screening order, allegations that supervisory officials knew about allegedly contaminated water at MCSP and failed to act to supply plaintiff with clean water do not suffice to plead a deliberate indifference claim. See Farmer, 511 U.S. at 837. In order to state a claim, plaintiff must plead facts showing how each defendant personally participated in the deprivation of his rights. See Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010). Government officials, regardless of their titles, are only liable for their own misconduct. Iqbal, 556 U.S. at 677.

Except as to Warden Lizarraga, discussed below, plaintiff does not allege any non-conclusory facts under which the named defendants plausibly bear any personal responsibility for

the alleged harm suffered. Accordingly, the first amended complaint fails to state an Eighth Amendment claim against those defendants.

In screening plaintiff's original complaint filed on April 21, 2021, by order dated November 23, 2021, the undersigned found plaintiff had stated a cognizable claim under the Eighth Amendment against former Warden Lizarraga,

> whom plaintiff alleges authorized inmate laborers to dig up and repair the water and sewer mains in front of Building #2 on A-Facility, resulting in raw sewage contaminating the water supply. (ECF No. 1 at 13-14.) Plaintiff alleges this contamination occurred when the sewer main ruptured and when two pipelines were inadvertently crossed until being corrected two days later. (Id.) Plaintiff alleges Lizarraga failed to take reasonable abatement measures when this occurred, such as disinfecting and sanitizing the pipelines, and supplying clean drinking water in the meantime. (Id. at 14.)

(ECF No. 8 at 8-9.) The first amended complaint omits the previous allegation that water and sewer pipelines were inadvertently crossed for two days, resulting in raw sewage contaminating the water supply on this occasion. While it is now a closer call as to whether a cognizable claim is stated, because plaintiff proceeds pro se, the undersigned will liberally construe the first amended complaint's allegations to find a plausible claim stated against Lizarraga based on the alleged repairs, use of chemicals, resulting harm, and failure to supply clean water.

**B.   Equal Protection**

The Equal Protection Clause broadly requires the government to treat similarly situated people equally. Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013). In order to state a claim, a plaintiff must usually allege the defendants acted with an intent or purpose to discriminate against plaintiff based upon membership in a protected class, such as a particular race or religion. See Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); but see also Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one").

Here, plaintiff does not allege discrimination based on membership in a protected class. Inmates are not a protected class for purposes of equal protection as they are not similarly situated to prison staff or visitors. In addition, to any extent plaintiff seeks to proceed under a "class of

one" theory, the first amended complaint fails to set forth facts from which it can be inferred that any defendant acted with an intent or purpose to discriminate against plaintiff as an individual. For these reasons, no equal protection claim can be stated on the underlying facts.

**IV.  Motion to Appoint Counsel (ECF No. 14)**

Plaintiff requests the appointment of counsel. The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). In certain exceptional circumstances, the district court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1). Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990). The test for exceptional circumstances requires the court to evaluate the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).

Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel. In the present case, the court does not find the required exceptional circumstances.

**V.    Conclusion**

Plaintiff may either elect to proceed forthwith against defendant Lizarraga or may take a final opportunity to attempt to correct the deficiencies identified herein to the extent he can do so in good faith. If plaintiff elects to proceed forthwith against defendant Lizarraga, he shall so notify the court. Following receipt of such a notice, the court will order service of defendant Lizarraga and the remaining claims will be dismissed.

In the alternative, plaintiff has thirty days to file an amended complaint. If plaintiff chooses to file an amended complaint, it should be brief, and must state what each named defendant did that led to the deprivation of constitutional rights. Although plaintiff has been

1  granted the opportunity to amend, it is not for the purposes of adding new and unrelated claims.
2  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).
3      Local Rule 220 requires that an amended complaint be complete in itself without reference
4  to any prior pleading. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended
5  complaint is filed, the original complaint no longer serves a function in the case. Id. The amended
6  complaint should be titled "Second Amended Complaint" and should reference the case number.
7      If plaintiff does not wish to amend further or proceed only on the claim identified, then he
8  may file a notice of voluntary dismissal which will terminate this action by operation of law
9  without prejudice. Fed. R. Civ. P. 41(a)(1)(A)(i).
10     In accordance with the above, IT IS HEREBY ORDERED:
11     1. Plaintiff's motion for the appointment of counsel (ECF No. 14) is denied.
12     2. The Clerk's Office shall send plaintiff a blank civil rights complaint form.
13     3. Within thirty days from the date of service of this order, plaintiff must file one of the
14 following:
15         a. A notice of election to proceed on the first amended complaint as screened
16           with an Eighth Amendment claim against Warden Lizarraga;
17         b. A second amended complaint curing the deficiencies identified in this order;
18           or
19         c. A notice of voluntary dismissal.
20     4. Plaintiff is cautioned that failure to respond to this order will result in a recommendation
21 that this action be dismissed with prejudice for failure to obey a court order and failure to prosecute.
22 Dated: June 28, 2022

DLB7
j'we0712.scrnfac

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

8