1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  JOANNA B. HOOD, State Bar No. 264078
   Supervising Deputy Attorney General
3  NECULAI GRECEA, State Bar No. 307570
   Deputy Attorney General
4    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013-1230
5    Telephone:  (213) 269-6443
     Fax:  (916) 761-3641
6    E-mail:  Neculai.Grecea@doj.ca.gov
   *Attorneys for Defendant*
7  *J. Lizarraga*

8             IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10                   SACRAMENTO DIVISION

11

12

13  **XAVIER LUMAR J'WEIAL,**                    2:21-cv-00712-WBS (DB)

14                              Plaintiff,

15          v.                                   **DEFENDANT'S NOTICE OF MOTION
                                                 AND MOTION TO DISMISS
16  **CALIFORNIA DEPATMENT OF**                  PLAINTIFF'S FIRST AMENDED
    **CORRECTIONS AND**                          COMPLAINT; MEMORANDUM OF
17  **REHABILITATION, et al.,**                  POINTS AND AUTHORITIES IN
                                                 SUPPORT**
18                              Defendant.
                                                 Judge:      The Honorable Deborah
19                                                           Barnes
                                                 Action Filed:   April 21, 2021
20

21       **TO PLAINTIFF XAVIER L. J'WEIAL, IN PRO PER:**

22       **PLEASE TAKE NOTICE THAT** Defendant J. Lizarraga moves the Court under Federal

23  Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Eighth Amendment claim on the following

24  grounds: (1) Plaintiff failed to properly exhaust administrative remedies, as required by the Prison

25  Litigation Reform Act (PLRA); (2) Plaintiff failed to state a cognizable Eighth Amendment claim

26  against Defendant in his official capacity; (3) Plaintiff failed to state a cognizable Eighth

27  Amendment claim against Defendant in his individual capacity; (4) Defendant is entitled to

28  qualified immunity; and (5) the claim for injunctive relief must be dismissed because Defendant

is not the appropriate individual who can provide such relief.  Dismissal should be without leave to amend.

Defendant's motion is based on this notice of motion and motion, the memorandum of points and authorities, the pleadings and records on file in this action, the concurrently-filed request for judicial notice, and any such other matters as may properly come before this Court. Pursuant to Eastern District of California Local Rule 230(*l*), this motion shall be submitted upon the record and Defendant will not appear before the Court for a hearing unless otherwise ordered.


Dated:  July 17, 2023                              Respectfully submitted,

                                                   ROB BONTA
                                                   Attorney General of California
                                                   JOANNA B. HOOD
                                                   Supervising Deputy Attorney General



                                                   */s/ Neculai Grecea*
                                                   NECULAI GRECEA
                                                   Deputy Attorney General
                                                   *Attorneys for Defendant*
                                                   *J. Lizarraga*

1

# TABLE OF CONTENTS

2

**Page**

3

Memorandum of Points and Authorities.................................................................... 1

4

Introduction .............................................................................................................. 1

Procedural History .................................................................................................... 1

5

Summary of Allegations ........................................................................................... 3

6

Legal Standard .......................................................................................................... 3

7

Argument .................................................................................................................. 4

8

     I.     Plaintiff Failed to Exhaust Administrative Remedies. .......................... 4

         A.     Legal Standard ........................................................................... 4

9

         B.     Plaintiff Did Not Exhaust All Available Administrative Remedies. .......... 5

10

     II.    The FAC Fails to State a Cognizable Deliberate Indifference Claim Against Defendant. ................................................................................. 6

11

         A.     Legal Standard. .......................................................................... 6

12

         B.     The FAC Fails to State a Cognizable Claim Against Defendant in His Official Capacity and Plaintiff's Requests for Injunctive Relief Must Be Dismissed. .................................................... 7

13

         C.     The FAC Fails to State a Cognizable Claim Against Defendant in His Individual Capacity. .......................................................... 9

14

15

             1.     Plaintiff's Allegations Rest on Pure Speculation. ......................... 9

16

             2.     Defendant Was Not Deliberately Indifferent Because He Was Not Personally Involved in Causing the Water Contamination. .................................................................... 12

17

             3.     Defendant Was Not Subjectively Aware of a Risk of Harm. ....... 14

18

         D.     Plaintiff's Claim Cannot Rest on a Theory of Supervisory Liability. ...... 15

19

         E.     Defendant Cannot Be Held Liable Under a Theory of Negligence. ......... 17

     III.   Defendant Is Entitled to Qualified Immunity.................................... 17

20

         A.     Applicable Legal Standard. ...................................................... 17

21

         B.     Defendant Is Entitled to Qualified Immunity Because Plaintiff Did Not Establish a Constitutional Violation.................................. 18

22

         C.     Defendant Is Entitled to Qualified Immunity Because It Was Not Clearly Established That His Conduct Violated the Constitution. ........... 19

23

     IV.   Leave to Amend Should Not Be Granted. ....................................... 20

24

Conclusion.............................................................................................................. 20

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Aholelei v. Dept. of Public Safety*
5       488 F.3d 1144 (9th Cir. 2007) ..................................................................................... 7

6

*Albino v. Baca*
        747 F.3d 1162 (9th Cir. 2014) ..................................................................................... 5

7

*Alfrey v. United States*
8       276 F.3d 557 (9th Cir. 2002) ..................................................................................... 14

9

*Alston v. Read*
10      663 F.3d 1094 (9th Cir. 2011) ................................................................................... 18

11

*Alvarez v. Hill*
        667 F.3d 1061 (9th Cir. 2012) ..................................................................................... 8

12

*Anderson v. Creighton*
13      483 U.S. 635 (1987) ................................................................................................. 17

14

*Ashcrof v. al-Kidd*
15      563 U.S. 731 (2011) ................................................................................................. 19

16

*Ashcroft v. Iqbal*
        556 U.S. 662 (2009) ...................................................................................... 4, 15, 18

17

*Balistreri v. Pacifica Police Dep't*
18      901 F.2d 696 (9th Cir. 1990) ..................................................................................... 3

19

*Barren v. Harrington*
20      152 F.3d 1193 (9th Cir. 1998) ................................................................................... 13

21

*Bell Atlantic Corp. v. Twombly*
        550 U.S. 544 (2007) ............................................................................................... 4, 9

22

*Bell v. Mahoney*
23      No. 18-cv-05280 PA (KES), 2002 WL 4334115 (C.D. Cal. 2002) ........................................ 2

24

*Bressi v. Ford*
25      575 F.3d 891 (9th Cir. 2009) ..................................................................................... 13

26

*Casto v. Newsom*
        No. 2:19-cv-2312 KJN, 2020 WL 1700008 (E.D. Cal. Apr. 8, 2020) ...................................... 6

27

*Clegg v. Cult Awareness Network*
28      18 F.3d 752 (9th Cir. 1994) ..................................................................................... 10

1

**TABLE OF AUTHORITIES**
(continued)

2

<u>Page</u>

3

*Cross v. Newsom*

4
    No. 2:19-cv-02462 WBS (CKD), 2020 WL 6724637 (E.D. Cal. Nov. 16, 2020) ................... 6

*Currie v. Newsom*

5
    No. 2:20-cv-0503 KJN, 2020 WL 1700023 (E.D. Cal. Apr. 8, 2020)..................................... 6

6

*Davis v. Scherer*

7
    468 U.S. 183 (1984)............................................................................................................... 18

*Dittman v. California*

8
    191 F.3d 1020 (9th Cir. 1999) ............................................................................................... 7

9

*Entler v. Gregoire*

10
    872 F.3d 1031 (9th Cir. 2017) ............................................................................................. 19

11

*Estelle v. Gamble*

12
    429 U.S. 106 (1976)............................................................................................................... 17

13

*Farmer v. Brennan*

14
    511 U.S. 825 (1994)....................................................................................................6, 14, 17

*Foster v. Elliot*

15
    No. 2:19-cv-2162 KJM (EFB), 2020 WL 9889553 (E.D. Cal. Apr. 20, 2020)..................... 11

16

*Frost v. Agnos*

17
    152 F.3d 1124 (9th Cir. 1998) ............................................................................................. 17

18

*Guerra v. Sutton*

19
    783 F.2d 1371 (9th Cir. 1986) ............................................................................................. 18

*Hafer v. Melo*

20
    502 U.S. 21 (1991)................................................................................................................. 7

21

*Haines v. Kerner*

22
    404 U.S. 519 (1972)............................................................................................................. 10

23

*Hansen v. Black*

24
    885 F.2d 642 (9th Cir. 1989) ......................................................................................... 15, 16

*Harper v. City of Los Angeles*

25
    533 F.3d 1010 (9th Cir. 2008) ............................................................................................... 7

26

*Harvey v. Jordan*

27
    605 F.3d 681 (9th Cir. 2010) ................................................................................................. 5

28

Def.'s Not. Mot. and Mot. Dismiss FAC; Mem. P. & A. Supp. (2:21-cv-00712-WBS (DB))

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Haygood v. Newsom*
4
    No. 2:20-cv-02346 KJN, 2021 WL 1388437 (E.D. Cal. Apr. 13, 2021)................................ 6

5
*Hernandez v. Macomber*
    No. 2:22-cv-0964 DB, 2023 WL 425623 (E.D. Cal. Jan. 26, 2023) .................................... 16
6

*Hicks v. State Medical*
7
    DB, 2017 WL 4247974 (E.D. Cal. Sept. 22, 2017) ............................................................ 11

8
*Holley v. Cal. Dep't of Corr.*
    599 F.3d 1108 (9th Cir. 2010) ........................................................................................... 7
9

*Hudson v. McMillian*
10
    503 U.S. 1 (1992)............................................................................................................... 6

11
*Hunter v. Bryant*
    502 U.S. 224 (1991) ......................................................................................................... 18
12

13
*Ivey v. Board of Regents of Univ. of Alaska*
    673 F.2d 266 (9th Cir. 1982) ........................................................................................... 15
14

*J'Weial v. Newsom*
15
    No. 2:19-cv-2239 KJM (KJN) (E.D. Cal.) .................................................................... 1, 2

16
*Kentucky v. Graham*
17
    473 U.S. 159 (1985)........................................................................................................... 7

18
*Kisela v. Hughes*
    138 S. Ct. 1148 (2018) ..................................................................................................... 18
19

*Lacey v. Maricopa Cty.*
20
    693 F.3d 896 (9th Cir. 2012) ..................................................................................... 12, 18

21
*Lee v. City of Los Angeles*
    250 F.3d 668 (9th Cir. 2001) ............................................................................................. 4
22

23
*Leer v. Murphy*
    844 F.2d 628 (9th Cir. 1988) ..................................................................................7, 13, 15
24

*Lopez v. Cate*
25
    No. 11-cv-2644 YGR, 2012 WL 4677221 (N.D. Cal. Sept. 30, 2012) ............................ 16

26
*Lopez v. Smith*
27
    203 F.3d 1122 (9th Cir. 2000) ........................................................................................... 4

28

iv

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Malley v. Briggs*
    475 U.S. 335 (1986)................................................................ 17

*Marquez v. McEwen*
    No. 15-cv-7911 R (SS), 2012 WL 4726566 (C.D. Cal. Aug. 10, 2016) .............................. 16

*McGlinchy v. Shell Chemical Co.*
    845 F.2d 802 (9th Cir. 1988)............................................................ 10

*Moore v. Hatton*
    No. 5:17-cv-03696 BLF, 2018 WL 3145748 (N.D. Cal. Jun. 26, 2017) .............................. 15

*Norsworthy v. Beard*
    87 F. Supp. 3d 1104 (N.D. Cal. 2015) ..................................................... 2

*Pearson v. Callahan*
    555 U.S. 236 (2009)................................................................ 17, 19

*Perez v. City of Roseville*
    926 F.3d 511 (9th Cir. 2019)......................................................... 18, 19

*Porter v. Nussle*
    534 U.S. 516 (2002)................................................................... 4

*Richard v. Aldridge*
    DB, 2020 WL 469348 (E.D. Cal. Jan. 29, 2020)........................................ 11, 12

*Saucier v. Katz*
    533 U.S. 194 (2001)................................................................. 17

*Seera v. Lappin*
    600 F.3d 1191 (9th Cir. 2010) ......................................................... 20

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001) .......................................................... 4

*Starr v. Baca*
    652 F.3d 1202 (9th Cir. 2011) ........................................................ 16

*Taylor v. Bird*
    2021 WL 4751270 (E.D. Cal. Oct. 12, 2021)......................................... 11, 12

*Taylor v. List*
    880 F.2d 1040 (9th Cir. 1989) ........................................................ 15

v

Def.'s Not. Mot. and Mot. Dismiss FAC; Mem. P. & A. Supp. (2:21-cv-00712-WBS (DB))

1

## **TABLE OF AUTHORITIES**
### (continued)

2

**Page**

3

*Toussaint v. McCarthy*
   801 F.2d 1080 (9th Cir. 1986) ........................................................................ 19

4

5

*Vanzuylen v. Ribera*
   No. 1:20-cv-0057 DAD (JLT), 2020 WL 4430628 (E.D. Cal. Jul. 31, 2020) ...... 10

6

7

*Wesley v. Davis*
   333 F. Supp. 2d 888 (C.D. Cal. 2004) ............................................................ 16

8

*Whitley v. Albers*
   475 U.S. 312 (1986).......................................................................................... 17

9

10

*Will v. Michigan Dep't of State Police*
   491 U.S. 58 (1989)............................................................................................ 7

11

*Woodford v. Ngo*
   548 U.S. 81 (2006)............................................................................................ 4

12

13

**STATUTES**

14

28 U.S.C.
   § 1915.............................................................................................................. 2

15

16

42 U.S.C.
   § 1983....................................................................................................... *passim*

17

   § 1997e(a)..................................................................................................... 4, 5

18

Cal. Code Regs. Title 15
   § 3084.1(a)..................................................................................................... 4

19

   § 3084.7......................................................................................................... 5

20

   § 3086.6(b)(1)............................................................................................... 6

21

**CONSTITUTIONAL PROVISIONS**

22

Eighth Amendment ........................................................................................ *passim*

23

Eleventh Amendment ........................................................................................ 7

24

**COURT RULES**

25

Fed. R. Civ. P.
   8 ................................................................................................................. 11

26

   12(b)(6) .................................................................................................... 3, 5

27

L.R.
   133(i)(3)(ii)................................................................................................. 11

28

Def.'s Not. Mot. and Mot. Dismiss FAC; Mem. P. & A. Supp. (2:21-cv-00712-WBS (DB))

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION[1]

Plaintiff is a California state prisoner with an extensive litigation history in federal court. He has been housed at Mule Creek State Prison (MCSP) since 2016, where he claims he was forced to bathe and drink contaminated water, leading to adverse health effects. Plaintiff now wants to hold Defendant—the former MCSP Warden and only defendant left in this case— personally liable for work performed by a construction crew on prison grounds, which in turn allegedly contaminated the prison's water supply. Notwithstanding the Court's screening order finding a cognizable Eighth Amendment claim, the operative First Amended Complaint (FAC) suffers from several deficiencies, all of which are fatal to Plaintiff's claim.

Plaintiff previously brought this same lawsuit, which was dismissed for failure to exhaust administrative remedies. Despite being instructed to exhaust his remedies, Plaintiff re-filed his claim and admits, on the face of the FAC, that he bypassed a requisite level of review for his grievance. This alone is sufficient grounds to dismiss this action.

But, even if this Court finds that Plaintiff exhausted his remedies prior to filing suit, his claim nonetheless fails because the allegations lack any factual basis and, without more, Defendant cannot be held liable for a constitutional violation merely because he was the prison warden. Nor are Plaintiff's allegations sufficient to satisfy the subjective prong of his Eighth Amendment claim. Further, Plaintiff's request for injunctive relief also necessarily fails because Defendant is in no position to provide any such relief. Additionally, Defendant is entitled to qualified immunity.

For these reasons, and as more fully described in this motion, Defendant respectfully requests that the Court dismiss the FAC without leave to amend.

## PROCEDURAL HISTORY

Plaintiff previously brought this case in 2019, captioned *J'Weial v. Newsom*, No. 2:19-cv- 2239 KJM (KJN) (E.D. Cal.) (*see* Req. Jud. Not. (RJN) at AGO_001-003.) In that case, Plaintiff

---

[1] The Attorney General's Office acknowledges the substantial contribution of summer intern Justin Pedroso (U.C. Law San Francisco) in preparing this brief.

1    argued he was a "whistleblower" and therefore exempt from the PLRA's exhaustion

2    requirements, and the case was dismissed for failure to exhaust administrative remedies.  (*Id.* at

3    AGO__007-009.)  In dismissing the case, the court noted that the failure to exhaust was clear

4    from the face of the complaint.  (*Id.* at AGO_009, 010-013.)

5         Plaintiff then initiated the instant case in April 2021.  (ECF No. 1.)  He filed the operative

6    First Amended Complaint (FAC), which was erroneously titled "Second Amended Complaint."

7    (*See generally* ECF No. 13 (First Am. Compl. (FAC).)  The Court subsequently screened the

8    FAC and found that Plaintiff's allegations stated an Eighth Amendment claim only as against

9    Defendant.  (ECF No. 16.)  The Court noted stark differences between the FAC and the original

10   complaint, where Plaintiff had previously alleged that Defendant authorized inmate laborers to

11   dig and repair water and sewer pipes, resulting in raw sewage contaminating the water supply.

12   (*Id.* at 6.)  Plaintiff alleged that the contamination occurred when the sewage pipe ruptured and

13   two other pipelines were inadvertently crossed for two days, until they were finally fixed.  (*Id.*)

14   Defendant allegedly failed to take reasonable abatement measures, such as disinfecting and

15   sanitizing the pipelines, and supplying clean drinking water in the meantime.  (*Id.*)

16        Plaintiff undoubtedly benefitted from a very liberal interpretation of the allegations in the

17   FAC, as the Court itself acknowledged:

18       The first amended complaint omits the previous allegation that water and sewer pipelines
         were inadvertently crossed for two days, resulting in raw sewage contaminating the water
19       supply on this occasion.  While it is now a closer call as to whether a cognizable claim is
         stated, because plaintiff proceeds pro se, the undersigned will liberally construe the first
20       amended complaint's allegations to find a plausible claim stated against Lizarraga based on
         the alleged repairs, use of chemicals, resulting harm, and failure to supply clean water.
21

22   (*Id.* at 6.)

23        Rather than amending, Plaintiff then elected to proceed on the single cognizable Eighth

24   Amendment claim against Defendant.  (ECF No. 22.)  Defendant now moves to dismiss.[2]

25            [2] The Court's screening of a claim under 28 U.S.C. § 1915 does not prevent a defendant
         from moving to dismiss the action later in the proceedings.  *Norsworthy v. Beard*, 87 F. Supp. 3d
26       1104, 1111 n.4 (N.D. Cal. 2015) ("[E]ven if the First Amended Complaint had previously
         survived screening, defendant would still be entitled to pursue a motion to dismiss and the Court
27       would still have discretion to grant it."); *Bell v. Mahoney*, No. 18-cv-05280 PA (KES), 2002 WL
         4334115 at *4 (C.D. Cal. 2002) ("sua sponte screening and dismissal procedure is cumulative of,

28

                                              2

**SUMMARY OF ALLEGATIONS**

The Court is already familiar with Plaintiff's allegations.  To avoid redundancy, the general allegations against Defendant are summarized here.[3]  According to Plaintiff, Defendant was deliberately indifferent to his health and safety, in violation of the Eighth Amendment.  (FAC at 30–36.)  Specifically, Defendant inadvertently caused the water to be contaminated while a work crew was attempting to repair a broken water system, then used chemicals to mitigate water contamination (which Plaintiff also asserts caused side effects to his health), and failed to supply bottled water upon request.  (*Id*. at 24–25.)

Plaintiff first claims that construction workers under Defendant's supervision accidently broke some sewage pipes they were repairing.  (*Id*. at 24.)  Plaintiff posits that, as a result, sewage water "inadvertently" contaminated the ground water.  (*Id*.)  Although Plaintiff admits that mitigation measures were taken to disinfect the drinking water by cleansing it with chemicals, those chemicals in turn caused Plaintiff to experience certain side effects.  (*Id*. at 24–25.)  Plaintiff is unable to identify the chemicals used to disinfect the water.  (*Id*. at 24.)  According to Plaintiff, Defendant should have disinfected the entire pipeline and provided drinking water.  (*Id*.)

Plaintiff now seeks monetary damages, declaratory judgment, and injunctive relief.  (*Id*. at 30–36.)

**LEGAL STANDARD**

A court may dismiss a complaint for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  Fed. R. Civ. P. 12(b)(6); *Balistreri v.*

---

not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring") (collecting cases).
    [3] The FAC appears to track, nearly word for word, information contained in a newspaper article regarding MCSP's contamination of the neighboring Mule Creek River.  *See* https://www.ledger.news/news/what-s-in-your-water-contaminated-water-allegedly-from-mule-creek-state-prison-could-make/article_a80d2316-f99b-11e8-8a84-63071e05b2e3.html (last accessed July 10, 2023).  But the article does not contain any information about the contamination of the prison's domestic water, for the use of inmates and staff members.  MCSP's dumping of untreated sewage water into the Mule Creek River resulted is well documented, and resulted in fines levied against the California Department of Corrections and Rehabilitation, as well as consent decree regarding infrastructure improvements.  *See, e.g.*, https://www.ledger.news/news/cdcr-agrees-to-clean-up-its-mess-at-mule-creek/article_2be592c4-f9bd-11ed-a2cb-b39c8bcad177.html (last accessed July 10, 2023).  But Defendant is not aware of any information that the prison's potable water was ever contaminated.

1   *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  On a motion to dismiss, the court

2   generally must consider the factual allegations in the complaint "as true and . . . in the light most

3   favorable" to the plaintiff, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), but it

4   need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable

5   inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Determining

6   whether a complaint states a plausible claim for relief is "a context-specific task that requires the

7   reviewing court to draw on its judicial experience and common sense.  *Ashcroft v. Iqbal*, 556 U.S.

8   662, 679 (2009).  Merely stating formulaic recitations of the elements of a cause of action is

9   insufficient to state a claim.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  The

10  claim must also rise above the level of mere speculation.  *Id*. at 555.  Specifically, for a claim to

11  be plausible, while it does not need to be the most likely explanation, it cannot have obvious,

12  alternative explanations.  *Id*. at 567.  And, while the court should liberally grant leave to amend a

13  dismissed complaint, it need not do so if the deficiency cannot be cured by amendment.  *Lopez v.*

14  *Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

15                                    **ARGUMENT**

16  **I.    PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES.**

17       **A.    Legal Standard**

18       Under the PLRA, an inmate must exhaust his available administrative remedies before

19  filing suit.  *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378 (2006).  Specifically, the PLRA holds

20  that "[no] action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or

21  any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

22  such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion

23  in prisoner cases covered by § 1997e(a) is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524

24  (2002).

25       Prisoners may appeal "any policy, decision, action, condition, or omission by the

26  department or its staff that the inmate or parolee can demonstrate as having a material adverse

27  effect upon his or her health, safety, or welfare" through administrative remedies.  Cal. Code

28  Regs. tit. 15, § 3084.1(a).  Administrative grievances go through three levels of review, with a

                                         4

final decision from the third level of review satisfying the exhaustion requirement. *Id.*, § 3084.7.
A grievance must be reviewed at all three levels for administrative remedies to be considered
"exhausted." *Id.* Compliance with these exhaustion requirements is required and failure to do so
bars complaints regarding prison conditions under federal law from being brought in federal
court. 42 U.S.C. § 1997e(a). Should a prisoner fail to exhaust administrative remedies, "a
defendant may move for dismissal under Rule 12(b)(6)." *Albino v. Baca*, 747 F.3d 1162, 1166
(9th Cir. 2014).

**B.    Plaintiff Did Not Exhaust All Available Administrative Remedies.**

Plaintiff's failure to exhaust administrative remedies is clear from the face of the FAC.
Specifically, he admits to skipping the second level of the administrative grievance process, and
submitting his grievance straight to the third and final level of review:

> Plaintiff . . . used the prison 602 appeal grievance procedure at MCSP.  Second Level
> was bypassed.  Plaintiff then filed to the Third Level . . . where the Office of Appeals
> violated Plaintiff's time constraints.

(*See* FAC at 7).

By his own admission, Plaintiff bypassed an entire stage of his administrative remedies and
improperly tried to circumvent the appeals process under the PLRA.  In failing to follow the
proper steps of the administrative grievance procedure, Plaintiff deprived Defendant and MCSP
staff of an opportunity to address the issues in his grievance.  Furthermore, by skipping the
second level of appeal, Plaintiff did not exhaust his administrative remedies.  Prisoners are found
to have exhausted their administrative remedies only when they have obtained a decision at every
level of appeal. *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010).  Plaintiff did not obtain a
decision during the second level of appeal.  (FAC at 7).

Plaintiff's attempt to blame the Office of Appeals (i.e.: the third level of review) for its
belated response to his grievance, even if true, does not cure his failure to precede his submission
to the final level of review with the requisite submission at the lower, second level of review.  In
other words, Plaintiff's apparent argument that his administrative remedies were unavailable
based on the third level of review's delay in responding to his grievance is a red herring.  Even if
the third level of review did not issue a response until over a year after Plaintiff submitted the

5

Def.'s Not. Mot. and Mot. Dismiss FAC; Mem. P. & A. Supp. (2:21-cv-00712-WBS (DB))

1   grievance (*see* FAC at 7), that does not exempt Plaintiff from submitting the grievance in the first

2   instance to the first and second levels of review—the second of which he bypassed.  The

3   regulations guard against this exact scenario and provide, in relevant part, that grievances may be

4   rejected when:

5       The inmate or parolee has submitted the appeal for processing at an inappropriate
        level bypassing lower level(s) of review, e.g., submitting an appeal at the third level
6       prior to lower level review.

7   *See* Cal. Code Regs. tit. 15, § 3086.6(b)(1).

8       Thus, the FAC should be dismissed based on Plaintiff's admitted failure to follow

9   procedures and fully exhaust the administrative grievance process.[4]

10

11  **II.    THE FAC FAILS TO STATE A COGNIZABLE DELIBERATE INDIFFERENCE CLAIM
            AGAINST DEFENDANT.**

12      **A.    Legal Standard.**

13      Claims of deliberate indifference for safety or prison conditions under the Eighth

14  Amendment have two prongs: objective and subjective.  *Farmer v. Brennan*, 511 U.S. 825, 834

15  (1994).  Under the objective prong, a prison official's acts or omissions of an act must be

16  "sufficiently serious" and an "extreme deprivation."  *Id.* at 834; *Hudson v. McMillian*, 503 U.S. 1,

17  8-9 (1992).  Under the subjective prong, a prison official must have had a "sufficiently culpable

18  state of mind" beyond mere negligence when committing the alleged violation.  *Farmer*, 511 U.S.

19  at 834, 835 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297–99 (1991), and collecting cases).  A

20  prison official must specifically have knowledge of facts that would infer an excessive risk to an

21  inmate's health or safety, actually draw the desired inference, and disregard that excessive risk.

22  *Id.* at 837.

23  _____

24      [4] Plaintiff's lawsuit appears to be one of several cookie-cutter lawsuits brought by MCSP
    prisoners regarding the alleged water contamination at that prison—most of which were
25  dismissed for failure to exhaust administrative remedies.  *See Haygood v. Newsom*, No. 2:20-cv-
    02346 KJN, 2021 WL 1388437 (E.D. Cal. Apr. 13, 2021); *Cross v. Newsom*, No. 2:19-cv-02462
26  WBS (CKD), 2020 WL 6724637 (E.D. Cal. Nov. 16, 2020); *Casto v. Newsom*, No. 2:19-cv-2312
    KJN, 2020 WL 1700008 (E.D. Cal. Apr. 8, 2020); *Currie v. Newsom*, No. 2:20-cv-0503 KJN,
27  2020 WL 1700023 (E.D. Cal. Apr. 8, 2020).  Of these inmates, it appears that only Plaintiff has
    pursued his claim by re-filing it in the instant matter.  It is noteworthy that Plaintiff's handwriting
28  in the FAC in this case is identical to the handwriting found in three of the other four inmates'
    complaints in their respective lawsuits—*Cross*, *Casto*, and *Currie*.

In addition to the objective and subjective prongs, there is also a causation requirement. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). Specifically, an inmate-plaintiff must prove that the defendant was the actual and proximate cause of the injuries alleged. A prisoner's claims must be individualized, and acutely focus on the duties and responsibilities of the defendant. *See Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.")

**B.     The FAC Fails to State a Cognizable Claim Against Defendant in His Official Capacity and Plaintiff's Requests for Injunctive Relief Must be Dismissed.**

Plaintiff is seeking monetary damages and injunctive relief against Defendant both in his personal and official capacities. (FAC at 30–36.)

"Suits against state officials in their official capacity...should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the State of California). An official-capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Id.* at 166. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dept. of Public Safety,* 488 F.3d 1144, 1147 (9th Cir. 2007). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court." *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999).

Plaintiff seeks $10 million in compensatory damages. (FAC at 34.) But, because Plaintiff may not seek money damages from Defendant in his official capacity, his official capacity claim must be dismissed. However, to the extent Plaintiff pursues claims for prospective relief against a state official in his official capacity, he is not barred by the Eleventh Amendment, provided the official has authority to implement the requested relief. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 82 (1989).

Here, aside from monetary damages, Plaintiff seeks numerous forms of injunctive relief: (1) the provision of clean drinking water at MCSP for an indefinite time; (2) the appointment of the National Guard to implement a federal mandate regarding infrastructure repairs at MCSP; (3) the complete shutdown of MCSP; (4) a "fix" for the design flaws of all "270 design" prisons in the State of California by replacing all cast iron pipes; (5) decontamination of all "soil, water, water tables, and drinking water supplies" at MCSP and "in and around all 270 design prisons" to comply with federal Environmental Protection Agency standards; (6) a remedial "turn around" plan of action for California's entire corrections system, "which will be formulated by the Plaintiff;" (7) the creation of a special committee vetted by the Court to "take over the administration of all CDCR's operation[s];" (8) building a third water treatment plant at MCSP; (9) special congressional oversight with a Federal Bureau of Investigation task force to conduct a "deep investigation" into all activities of the California Department of Corrections and Rehabilitation and its staff members; and (10) an immediate cease of all retaliation against Plaintiff. (FAC at 30-34.) Plaintiff does not explain how or why Defendant, a now-retired prison warden, is in any position to provide any of this injunctive relief.[5]

Relatedly, Plaintiff's allegations are contradictory. On one hand, he alleges that the contamination of water occurred over two days, but was then fixed. On the other hand, he appears to allege there is a "continuing substantial risk of serious harm to [his] health." (*Id.* at 14.) Assuming any issues regarding the water have already been addressed, as Plaintiff appears to acknowledge, any request for injunctive relief premised on conditions that have since been fixed is moot. *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (claims for prospective injunctive relief are moot when a prisoner is "no longer subject to the prison conditions or policies he challenges").

For the foregoing reasons, Plaintiff's official capacity claims for monetary damages and injunctive relief against Defendant must be dismissed.

_____

[5] Although under rather shameful circumstances, Defendant retired from employment with CDCR a few years ago. *See* https://apnews.com/394c178a3f4f49eb3c521df15f47f36f (last accessed Jul. 10, 2023). Plaintiff also acknowledges that Defendant was employed as Warden at MCSP from 2015 to 2018. (*See* FAC at 10.)

1

**C.   The FAC Fails to State a Cognizable Claim Against Defendant in His
Individual Capacity.**

2

3

**1.   Plaintiff's Allegations Rest on Pure Speculation.**

4

As a threshold matter, Plaintiff's allegations about the sewage and water pipes at MCSP,

5

and their potential contamination, are baseless.  For instance, Plaintiff alleges that there are

6

"multiple cross connections of sewer, storm drain systems, which would be the source of

7

contamation [sic] waste flow entering multiple cross connections."  (FAC at 12.)  Plaintiff then

8

speculates about the nature of the "engineering of the piping system under MCSP" and the

9

lifespan of cast iron pipes, and questions the reasonableness of using this material for a prison that

10

was built in 1987.  (*Id.* at 12-13.)  Plaintiff alleges, in relevant part:

11

> As such, many of the water, sewer, and storm drain pipes in the ground at MCSP
> have severely corroded and cracked open.  It is to my belief that it is fact that many of

12

> these sewer pipes and water pipes are located side-by-side next to one another, over
> laped [sic] of each other in many areas, the broken sewer papes are infact [sic]

13

> leaking raw sewage and industrial waste directly into the drinking water supply pipes
> further contaminating the water that Plaintiff is forced to consume and bath [sic] with.

14

> It is fact that the use of these cast iron pipings is a factual design flaw of most, if not
> all, 270 design prisons in the State of California.

15

16

(*Id.* at 17.)

17

Plaintiff provides no explanation or factual basis for these allegations.  He does not identify

18

what informs his knowledge about the state of underground pipes at the prison, or the properties

19

of the materials used in their construction.  He does not explain how he knows the pipes are

20

corroded, beyond a statement that some unknown person told him so and he believes it to be true.

21

(*Id.*)  Plaintiff supports his claim that the water must have been contaminated by citing unusual

22

smell and sickness as evidence.  (*Id.* at 21, 24, 26.)  There are also no facts raised that

23

demonstrate the allegedly failed pipe repair and subsequent chemical usage caused the sickness

24

and smell that Plaintiff observed.  Plaintiff lacks personal knowledge of his allegations, offering

25

only speculation and conclusory statements.  *See Bell Atlantic Corp.*, 550 U.S. at 553-56

26

("Factual allegations must be enough to raise a right to relief above the speculative level.").  But,

27

even assuming that his allegations are true, no factual allegations are pled that link Defendant to

28

Plaintiff's alleged exposure to contaminated water.  That is, the FAC does not allege facts that, if

9

1    assumed true, would show that Defendant knew of and disregarded an excessive risk to inmate

2    health before or during the construction, caused by an alleged contamination of the prison's

3    domestic water supply.

4         As it stands, the FAC is comprised solely of conclusory statements and fails to allege facts

5    which, if assumed to be true, would establish that: (1) any dangerous materials or pathogens were

6    actually released into the *domestic* water supply at MCSP; (2) Plaintiff was exposed to such

7    contamination; (3) the water contamination was the root cause for Plaintiff's side effects; and (4)

8    bottled water should have been provided in addition to efforts to cleanse the water with

9    disinfecting agents.  Plaintiff's claim rests purely on his speculations that pipes were damaged,

10   the water was contaminated, and his ailments were caused by exposure to hazardous materials.

11   But his conclusion is not supported by any underlying assertions of fact.  For instance, while

12   Plaintiff alleges that the domestic water supply was contaminated, the facts that support this

13   conclusion appear to pertain to the prison's contamination of the Mule Creek River with sewage

14   waste—not the prison's own clean water supply.  Nor is it clear, from Plaintiff's allegations, that

15   any pipes at MCSP were actually ruptured and the water was contaminated.  *See, e.g., Vanzuylen*

16   *v. Ribera*, No. 1:20-cv-0057 DAD (JLT), 2020 WL 4430628, at *3 (E.D. Cal. Jul. 31, 2020)

17   (allegations that a prison was constructed at a certain period of time insufficient to support

18   assertion that prison used a certain type of materials for pipes when it was built, that the original

19   pipes are still in place today, or that the pipes are leaking any substance into the water).  Plaintiff

20   also does not allege facts that would support the conclusion that his asserted health side effects

21   resulted from the contamination of water over two days, or the subsequent use of chemicals to

22   cleanse the water.  Without more, Plaintiff's conclusory allegations "are insufficient to defeat a

23   motion to dismiss for failure to state a claim."  *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802,

24   810 (9th Cir. 1988).  And this Court is not "required to accept legal conclusions cast in the form

25   of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."

26   *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Defendant recognizes

27   that a pro se complaint, "however inartfully pleaded, must be held to "less stringent standards

28   than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  But,

10

1    the Court should decline to read allegations into the FAC that Plaintiff has not made explicit.  *See,*

2    *e.g.*, *Foster v. Elliot,* No. 2:19-cv-2162 KJM (EFB), 2020 WL 9889553 (E.D. Cal. Apr. 20, 2020)

3    (cautioning the plaintiff about the requirement of Rule 8 to provide a short and plan statement of

4    the claim, and noting that it is insufficient to name various defendants and implicitly associate

5    them with wrongdoing that is not specified).

6         This Court was previously faced with similar allegations of contaminated water in at least a

7    few other cases.  In *Taylor v. Bird*, an inmate alleged that the water source at Deuel Vocational

8    was contaminated and caused him to experience renal failure.  No. 2:20-cv-2007 JAM (DB), 2021

9    WL 4751270 (E.D. Cal. Oct. 12, 2021).[6]  The inmate also alleged that he had received a flyer

10   indicating that the water at the prison had not been tested during the time he was housed there.

11   *Id*. at *2.  Among other things, this Court found that the inmate did not set forth a basis for the

12   assertion that the water was contaminated, the complaint lacked any plausible suggestion of

13   causation, the allegations about contamination were speculative, and the "[u]nfounded

14   speculation that plaintiff's rental failure was caused by contaminated water was not enough, on its

15   own, to state a claim.  *Id*. at *2.

16        In *Hicks v. State Medical*, the inmate attempted to assert a claim of deliberate indifference

17   to medical needs and alleged that the water at Deuel Vocational Institution was contaminated.

18   No. 2:15-cv-0747 DB, 2017 WL 4247974 (E.D. Cal. Sept. 22, 2017).  This Court dismissed the

19   complaint because the allegations were "so vague and conclusory that [the Court] is unable to

20   determine whether the current action is frivolous or fails to state a claim for relief."  *Id*. at *4.

21        In *Richard v. Aldridge*, prison officials informed the inmate population that the water

22   supply at California Health Care Facility was contaminated for five days.  No. 2:19-cv-2006 DB,

23   2020 WL 469348 (E.D. Cal. Jan. 29, 2020).  During that time, all inmates were provided with

24   bottled water, and some inmates were provided with special showerhead fitters.  *Id*. at *2.

25   Plaintiff was not provided a showerhead fitter, which resulted in his inability to shower for five

26   days, thus developing a rash.  *Id*.  In dismissing the complaint initially, this Court found that the

27   _____

28   [6] In accordance with Local Rule 133(i)(3)(ii), copies of unpublished opinions cited in this
     memorandum have been served on Plaintiff.

1   deprivation was only temporary and the inmate failed to allege any facts to satisfy either the

2   objective or subjective component of an Eighth Amendment violation by the prison warden. *Id.*

3   at *3. After yet another dismissal for failure to state a claim, this Court eventually found a

4   cognizable claim—but only because Plaintiff alleged that he submitted a written inmate request

5   for interview directly to the warden, to which the warden responded in person and by telephone

6   by saying, "[Y]our unit is the forgotten unit when it comes to all supplies, so sorry about your

7   luck." (*See* RJN Ex. B at AGO_ 024.) In other words, taking the allegations as true, the warden

8   was aware of the inmate's medical need for water and failed to provide it. (*Id.*)

9        Here, unlike the inmates in *Taylor* and *Richard*, Plaintiff does not allege that he received

10   any type of written communication regarding a potential contamination of the water at MCSP. In

11   fact, all the allegations are based on newspapers and external information regarding the

12   contamination and pollution of the Mule Creek River, not the prison's own water supply. (*See*

13   *generally* FAC). Nor does Plaintiff allege that he submitted anything in writing to Defendant, or

14   that the Defendant otherwise responded or acknowledged that there was an issue with the prison's

15   water supply. But, even assuming, arguendo, that the water *was* in fact contaminated, it is unclear

16   how the allegations in the FAC are sufficient to impute any subjective knowledge of a risk of

17   harm to Defendant.

18

19        **2.    Defendant Was Not Deliberately Indifferent Because He Was Not Personally Involved in Causing the Water Contamination.**

20        Plaintiff generally asserts that Defendant acted with deliberate indifference and violated his

21   Eighth Amendment rights. (FAC at 4, 7) ("Defendant[] did have some form of personal

22   involvement."). This overly broad assertion, however, is not enough.

23        "Section 1983 has a causation requirement, with liability extending to those state officials

24   who subject, or cause to be subjected, an individual to a deprivation of his federal rights." *Lacey*

25   *v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012). "A person 'subjects' another to the

26   deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

27   act, participates in another's affirmative acts, or omits to perform an act which he is legally

28   required to do that causes the deprivation of which complaint is made." *Id.* (citing *Johnson v.*

12

Def.'s Not. Mot. and Mot. Dismiss FAC; Mem. P. & A. Supp. (2:21-cv-00712-WBS (DB))

*Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).  "Moreover, personal participation is not the only predicate for section 1983 liability." *Id.* (citing *Duffy*, 588 F.2d at 743).  "Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable." *Id.* (quoting *Duffy*, 588 F.2d at 743).  "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* (citing *Duffy*, 588 F.2d at 743).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer*, 844 F.2d at 633 (citations omitted).

Here, Plaintiff's own allegations contradict the notion that Defendant violated his constitutional rights.  Plaintiff admits that the purpose of the construction project was to repair the sewage and water system, and chemicals were "utilized in an attempt to stop or help prevent the contaminated water." (FAC at 17, 24, 26.)  The authorization to repair the pipes, and subsequent attempts to mitigate the harm by using chemicals, is evidence that affirmative efforts were made to protect the Plaintiff's wellbeing.  And, as best as can be deciphered, Plaintiff is not alleging he was deprived of drinking water; rather, he asserts that his specific request for bottled water (separate and apart from the water supplied to him with cleansing agents), was a clear constitutional violation.  (*Id*. at 9.)

Thus, Defendant's act or failure to act, cannot be said to have caused the alleged constitutional deprivation.  In fact, no reasonable assertions of fact suggest that Defendant personally participated in the alleged constitutional violations or caused them.  Liability under § 1983, if any, "must be based on the personal involvement of the defendant." *Bressi v. Ford*, 575 F.3d 891, 899 n. 8 (9th Cir. 2009) (noting "state actor must be involved to some extent in the deprivation of a federal right"); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (providing that "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights").

1    Because Plaintiff's personal involvement is alleged only on a purely speculative level,

2    Plaintiff's claim must be dismissed.

3              **3.      Defendant Was Not Subjectively Aware of a Risk of Harm.**

4        A heightened pleading standard applies to the subjective prong of Eighth Amendment

5    claims, such that Plaintiff must make non-conclusory allegations supporting an inference of

6    unlawful intent.  *See Alfrey v. United States*, 276 F.3d 557, 567-68 (9th Cir. 2002) (applying

7    standard to *Bivens* Eighth Amendment claim).  As previously explained, this heightened standard

8    and Plaintiff's conclusory, threadbare allegations against Defendant—as acknowledged by the

9    Court in its screening order—cannot form the basis of a cognizable claim against Defendant.

10   Even assuming that Plaintiff's allegations are sufficient to satisfy the objective prong, the claim

11   must be dismissed because he does not sufficiently allege facts regarding the second subjective

12   prong; that is, that Defendant knew of and disregarded an excessive risk to Plaintiff's health or

13   safety.  *See Farmer*, 511 U.S. at 837.

14       As a threshold matter, Plaintiff's allegations about the existence of domestic contaminated

15   water at MCSP are conclusory.  As previously mentioned, the only issue regarding water and

16   MCSP is the unlawful dumping of sewage water into the Mule Creek River, which is currently

17   being addressed via consent decree.  (*See* fn. 3, *supra*.)  However, even assuming there was an

18   issue with contaminated domestic water—that is, the water that inmates drink and use for

19   personal hygiene—the allegations in the FAC are insufficient to impute subjective knowledge.

20   First, even if it were true that Defendant failed to warn the inmate population that inmates could

21   or would be exposed to contaminated water, no facts are alleged that Defendant knew of facts

22   from which the inference could be drawn that a substantial risk of serious harm existed to

23   inmates, that he actually drew the inference, and yet failed to act.  Second, the fact that a

24   mitigation plan was in place (i.e.: using chemicals to decontaminate the water), it cannot be said

25   that Defendant ignored the possibility of exposure to contaminants and endangered Plaintiff's

26   safety.  Third, assuming as true that Plaintiff suffered the ailments alleged, there is no allegation

27   that exposure to the contaminated water—either by bathing or drinking it—was causally linked to

28   Plaintiff's ailments by a medical professional, without which his allegations regarding injury

                                    14

1   amount to no more than self-diagnosed symptoms that he was exposed to hazardous contaminants

2   from the pipe repair project.  Simply put, Plaintiff has not alleged sufficient fats showing that the

3   harm he suffered was caused by a deprivation for which Defendant was responsible.  *See, e.g.*,

4   *Moore v. Hatton*, No. 5:17-cv-03696 BLF, 2018 WL 3145748 (N.D. Cal. Jun. 26, 2017)

5   (dismissing complaint for failure to state a claim against prison officials, including warden, based

6   on lack of causal connection between the inmate's ailments and alleged exposure to harmful

7   contaminants during construction project at the Correctional Training Facility).

8        Because no factual allegations are sufficient to satisfy the subjective prong, Plaintiff's

9   Eighth Amendment claim necessarily fails.

10       **D.    Plaintiff's Claim Cannot Rest on a Theory of Supervisory Liability.**

11       As previously discussed, Plaintiff fails to allege facts sufficient to show a causal connection

12  between Defendant, and the alleged water contamination and subsequent deleterious health

13  effects.  The FAC nevertheless contains allegations that Defendant should be held liable based on

14  his position as a supervisor.  (FAC at 6.)  This argument is unavailing.

15       There is no *respondeat superior* liability under § 1983.  To state a sufficient claim against

16  someone in a supervisory position under § 1983, a plaintiff must allege facts demonstrating a

17  supervisor was either (1) personally involved in the violation; or (2) promulgated a program or

18  policy that is so deficient, it was repudiation of constitutional rights.  *Hansen v. Black*, 885 F.2d

19  642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Any allegations in

20  which named defendants are in supervisory positions must specifically state the causal

21  relationship between said defendants and the claimed constitutional violations.  *See Leer*, 844

22  F.2d at 633.  That causal relationship must be specifically alleged.  *Iqbal*, 556 U.S. at 676-77.

23  Vague and conclusory allegations will not suffice.  *Id.*; *see Ivey v. Board of Regents of Univ. of

24  Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

25       Here, Plaintiff's allegations are insufficient to satisfy either prong required for a finding of

26  supervisor liability.  Plaintiff cursorily alleges that Defendant was personally involved, but

27  speculates that must have been the case because he was the prison warden.  In other words, the

28  causal link is through Defendant's work duties as a prison official.  (*See* FAC at 6.)  This

1    argument fails because a public official's duties and responsibility for supervising the daily

2    operations of a prison are insufficient to establish personal involvement.  *Wesley v. Davis*, 333 F.

3    Supp. 2d 888, 892 (C.D. Cal. 2004).  Additionally, government officials are not responsible for

4    the violations of their subordinates merely because of their positions as supervisors.  *Hansen v.*

5    *Black*, 885 F.2d 642, 645-46 (9th Cir. 1989).  While it is true that supervisors may be held liable

6    for policies that they enact, there is no non-conclusory allegation that Defendant in this case was

7    involved in the repair of water pipes at MCSP, or subsequent efforts to mitigate any potential

8    contamination.  And a claim against a supervisor for deliberate indifference must be based, if

9    anything, on the supervisor's knowledge of and acquiescence in unconstitutional conduct by his

10   or her subordinates."  *Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011).

11           Plaintiff's claim is centered on Defendant being liable because of his position as a warden,

12   but fails to allege any facts demonstrating personal knowledge or involvement.  Nor does he

13   allege how the general description of Defendant's job responsibilities and role in his leadership

14   position at MCSP make him responsible for the pipe repair, any issues during repair, or the

15   subsequent contamination of water.  A claim against Defendant cannot be premised simply on his

16   role as prison warden.  *See, e.g.*, *Hernandez v. Macomber*, No. 2:22-cv-0964 DB, 2023 WL

17   425623 (E.D. Cal. Jan. 26, 2023) (broad allegations that a warden is legally responsible for prison

18   operations and inmate welfare insufficient to state a claim);  *Lopez v. Cate*, No. 11-cv-2644 YGR,

19   2012 WL 4677221 (N.D. Cal. Sept. 30, 2012) (same);  *Marquez v. McEwen*, No. 15-cv-7911 R

20   (SS), 2012 WL 4726566 (C.D. Cal. Aug. 10, 2016) (dismissing plaintiff's claim against warden

21   after recognizing that, if broad allegations against wardens were sufficient to state a claim, any

22   warden in the country would be named as defendant in every civil-rights action based that role

23   alone).

24           Furthermore, Plaintiff does not allege that Defendant promulgated a constitutionally

25   deficient policy or program under the second prong, so that could also not be the basis for a

26   finding of supervisory liability, either.  For these reasons, Plaintiff's supervisory liability claim

27   against Defendant fails.

28   / / /

1    **E.    Defendant Cannot Be Held Liable Under a Theory of Negligence.**

2    Plaintiff's allegations reveal, at most, that Defendant was negligent.  Negligence and even

3    gross negligence, however, are insufficient for an Eighth Amendment claim.  *Estelle*, 429 U.S. at

4    106; *see also Farmer*, 511 U.S. at 835-36, n. 4.  Deliberate indifference requires "more than

5    ordinary lack of due care for the prisoner's interests or safety."  *Whitley v. Albers,* 475 U.S. 312,

6    319 (1986).  The official's conduct must have been wanton.  *Farmer*, 511 U.S. at 835; *Frost v.*

7    *Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

8    For Plaintiff to state a cognizable claim, Defendant must have acted deliberately (or failed

9    to act), and must have done so in conjunction with a culpable state of mind.  As previously

10   discussed, Plaintiff fails to allege facts sufficient to satisfy this standard.  And, while Plaintiff's

11   allegations may be broadly read to imply negligence on the part of Defendant, that is neither what

12   he explicitly plead, nor would it be sufficient to state an Eighth Amendment claim.

13   **III.   DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY.**

14   **A.    Applicable Legal Standard.**

15   "[G]overnment officials performing discretionary functions [are entitled to] a qualified

16   immunity, shielding them from civil damages liability as long as their actions could reasonably

17   have been thought consistent with the rights they are alleged to have violated."  *Anderson v.*

18   *Creighton*, 483 U.S. 635, 638 (1987) (citations omitted).  When analyzing whether qualified

19   immunity applies, the court must determine (1) "whether a constitutional right would have been

20   violated on the facts alleged," and (2) "assuming a violation is established, . . . whether the right

21   was clearly established" at the time of the alleged violation.  *Saucier v. Katz*, 533 U.S. 194, 200,

22   (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *see also*

23   *Pearson*, 555 U.S. at 236 (holding that the court may determine the order of this analysis).  Both

24   inquiries must be answered in the affirmative to defeat qualified immunity.  *Pearson*, 555 U.S. at

25   223.

26   Qualified immunity "provides ample protection to all but the plainly incompetent or those

27   who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  An official is

28   entitled to qualified immunity if he or she acts under an objectively reasonable, even if mistaken,

17

1   belief that his or her conduct is lawful.  *Guerra v. Sutton*, 783 F.2d 1371, 1374 (9th Cir. 1986).

2   The Supreme Court has characterized qualified immunity as "both a defense to liability and a

3   limited entitlement not to stand trial or face the other burdens of litigation," *Ashcroft v. Iqbal*, 556

4   U.S. 662, 672 (2009) (internal quotation marks omitted), and has "repeatedly . . . stressed the

5   importance of resolving immunity questions at the earliest possible stage in litigation," *Hunter v.*

6   *Bryant*, 502 U.S. 224, 227 (1991) (per curiam).  It is a plaintiff's burden to establish (or, for the

7   case of a motion to dismiss, at least plausibly plead) that each defendant violated a specific and

8   clearly-established right.  *See Davis v. Scherer*, 468 U.S. 183, 197 (1984); *see also Kisela v.*

9   *Hughes*, 138 S. Ct. 1148, 1152 (2018) (noting that courts must "not. . . define clearly established

10  law at a high level of generality").

11      "For a constitutional right to be clearly established, '[t]he contours of the right must be

12  sufficiently clear that a reasonable official would understand that what he is doing violates that

13  right.'"  *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011) (quoting *Creighton*, 483 U.S. at

14  640).  The clearly established law must be "'particularized to the facts of the case,'" such that

15  "'any reasonable official in the defendant's shoes would have understood that he was violating

16  it.'"  *Perez v. City of Roseville*, 926 F.3d 511, 519 (9th Cir. 2019) (quoting *White v. Pauly*, 137 S.

17  Ct. 548, 552 (2017), and *Kisela*, 138 S. Ct. at 1153)).

18
19          **B.      Defendant Is Entitled to Qualified Immunity Because Plaintiff Did Not
                      Establish a Constitutional Violation.**

20      Plaintiff asserts that Defendant's actions "strip" him of qualified immunity.  (FAC at 10.)

21  As the Ninth Circuit has explained, if a plaintiff does not establish a violation of a constitutional

22  right, "then the officer's conduct was constitutional, and there can be no violation of § 1983."

23  *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (considering first "prong" of

24  qualified immunity analysis).

25      Plaintiff's facts, as pleaded, do not sufficiently establish a constitutional violation.  Among

26  other things, Defendant argues that Defendant was aware that contractors had breached their

27  bidding contract to build a third water treatment plant, and that the lack of a third plant is the

28

Def.'s Not. Mot. and Mot. Dismiss FAC; Mem. P. & A. Supp. (2:21-cv-00712-WBS (DB))

1    actual and proximate cause of his alleged harm.  (*Id*. at 10.)  Plaintiff offers only speculative

2    assertions and conclusory statements, rather than particularized facts, to support his claim.

3        Without any allegation of a constitutional violation, Defendant is entitled to qualified

4    immunity and the Court should dismiss this action.  *Pearson*, 555 U.S. at 223.

5

6    **C.    Defendant Is Entitled to Qualified Immunity Because It Was Not Clearly
         Established That His Conduct Violated the Constitution.**

7        Even assuming, *arguendo*, that the FAC did establish a constitutional violation of Plaintiff's

8    Eighth Amendment rights, any such right was not clearly established.  A government official's

9    conduct violates clearly established law when, at the time of the challenged conduct, the contours

10   of a right are sufficiently clear that every reasonable official would have understood that what he

11   is doing violates that right.  *Ashcrof v. al-Kidd*, 563 U.S. 731, 741 (2011).  Although there need

12   not be a case directly on point, "existing precedent must have placed the statutory or

13   constitutional question beyond debate."  *Id*.  Admittedly, prison officials must provide prisoners

14   with "food, clothing, shelter, sanitation, medical care, and personal safety."  *Toussaint v.*

15   *McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by *Sandin v.*

16   *Connor*, 515 U.S. 472 (1995).  But, this overly general proposition is not enough for the qualified

17   immunity analysis in this case.

18       In this case, it was not clearly established that performing repairs on water pipes and taking

19   steps to abate the inmates' exposure to contaminated water, such as treating the water with

20   cleansing agents, could violate the Eighth Amendment when the alleged issue lasted two days.

21   Without Supreme Court or Ninth Circuit precedent addressing such scenario, or even "a 'robust

22   consensus of cases of persuasive authority,'" such claimed right cannot have been clearly

23   established.  *Entler v. Gregoire*, 872 F.3d 1031, 1044-45 (9th Cir. 2017).  None of the conduct

24   imputed to Defendant in the FAC was such that "'any reasonable official in the defendant's shoes

25   would have understood that he was violating it.'"  *Perez*, 926 F.3d at 519 (citations omitted).  For

26   instance, no official in Defendant's position would believe that, after taking steps to disinfect the

27   water with cleansing chemicals, he would have also had to provide separate bottled water to the

28   inmate population.

1    Because it was not clearly established that Defendant violated clearly established law either

2    by ensuring that water pipes are repaired or by taking contamination abatement measures once

3    repairs were unsuccessful, Defendant is entitled to qualified immunity on Plaintiff's Eighth

4    Amendment claim.

5    **IV.    LEAVE TO AMEND SHOULD NOT BE GRANTED.**

6    For the reasons identified in this brief, and irrespective of how Plaintiff frames his

7    allegations, his claim fails.  Plaintiff should not be afforded further leave to amend his complaint

8    because he failed to exhaust administrative remedies before filing suit.  But, even if the Court

9    were to disagree with that conclusion, his claim against Defendant rests entirely on conclusory

10   allegations and there is no causal connection between Plaintiff's ailments, and Defendant's action

11   or inaction.  Consequently, amendment would be futile and dismissal of the complaint should be

12   with prejudice.  *Seera v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (leave to amend properly

13   denied as futile where facts failed to establish a constitutional violation as a matter of law).

14   **CONCLUSION**

15   The FAC should be dismissed because Plaintiff admits he failed to exhaust available

16   administrative remedies.  But, even if he did not fail to do so, or if his failure could be excused,

17   Plaintiff nevertheless fails to establish that the Defendant acted with deliberate indifference to his

18   safety, and because Defendant is entitled to qualified immunity.

19

20   Dated:  July 17, 2023                                    Respectfully submitted,

21                                                            ROB BONTA
                                                              Attorney General of California
22                                                            JOANNA B. HOOD
                                                              Supervising Deputy Attorney General
23

24                                                            */s/ Neculai Grecea*
                                                              NECULAI GRECEA
25                                                            Deputy Attorney General
                                                              *Attorneys for Defendant*
26                                                            *J. Lizarraga*

27   SA2023301070
     66090495.docx
28

# CERTIFICATE OF SERVICE

Case Name:   **Xavier Lumar J'Weial**                              No.   **2:21-cv-00712-WBS (DB)**
             **(T08643) v. CDCR, et al.**

I hereby certify that on <u>July 17, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>July 17, 2023</u>, at Los Angeles, California.

<table>
<tr><td>R.  Hill</td><td><em>/s/ R. Hill</em></td></tr>
<tr><td>Declarant for eFiling</td><td>Signature</td></tr>
</table>

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users.  On <u>July 17, 2023</u>, the foregoing document(s) have been mailed in the Office of the Attorney General's internal mail system, by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Xavier Lumar J'Weial, CDCR# T-08643          Xavier Lumar J'Weial, CDCR# T-08643
**Mule Creek State Prison**                         **CSP- Sacramento**
P.O. Box 409040                               P.O. Box 290001
Ione, CA 95640                                Represa, CA 95671

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>July 17, 2023</u>, at Los Angeles, California.

<table>
<tr><td>F. Callender Jr.</td><td><em>/s/ F. Callender Jr.</em></td></tr>
<tr><td>Declarant for Service by U.S. Mail</td><td>Signature</td></tr>
</table>